was for the recovery of money only, and the defendant Catherine, upon the rendering of final judgment therein, as to her, was entitled to costs, of course, (Code Civil Proc. § 3229,) although, for the reason that she and her husband answered by the same attorneys, only one bill of costs was awarded to both. The direction of the judgment of the court of appeals that that affirmance of the judgment in favor of Catherine should be "without costs," related, necessarily, to costs in that court, (*Sisters of Charity* v. *Kelly*, 68 N. Y. 628; *In re Water Com'rs of Amsterdam*, 104 N. Y. 677, 10 N. E. Rep. 545,) as did the direction that the reversal of the judgment against the other defendants should be with costs to abide the event of a new trial. The judgment in favor of George and Catherine for a single bill of costs, being affirmed as to Catherine, and reversed as to George, became a judgment in favor of Catherine alone, and it was her right to enforce it for her own benefit. *Johnstone* v. *Conner*, 13 Civil Proc. R. 19. In the case cited, it was held that, "where a joint judgment in favor of two defendants is affirmed as to one of them, and reversed as to the other, the latter, by force of the decision, ceases to have any proprietary interest therein; but, as to the other party, it remains unimpaired, and in full force, and he has power to enforce the judgment, and is entitled to maintain an action upon an undertaking given by his opponent upon appeal therefrom." The judgment of the special term should be affirmed. All concur.

---

CARNAGHAN et al. v. EXPORTERS' & PRODUCERS' OIL CO., Limited.

(*Supreme Court, General Term, First Department.* June 6, 1890.)

WRITS—SERVICE OF PROCESS ON CORPORATIONS—DIRECTORS.

   The board of directors of a domestic corporation organized under Laws N. Y. 1875, c. 611, passed a resolution to transfer all its property to the stockholders, who then surrendered their stock. There were no formal resignations by the directors, but the president declared at the close of the meeting that there were no longer any directors or stockholders, and "we have forever dissolved." No further meeting or election was held. *Held*, that the directors continued in their official capacity, and that process against the corporation could properly be served on them, under Code Civil Proc. N. Y. § 431, authorizing service on a director.

Appeal from special term, New York county.

Action by James L. Carnaghan and another against the Exporters' & Producers' Oil Company, Limited. Defendant having moved to set aside service of summons, the matter was referred to WILLIAM B. HORNBLOWER, Esq., who filed the following opinion:

"It is referred to me by an order entered herein on the 27th day of June, 1889, to determine and report to the court upon the question of fact whether, at the time of the service of the summons and complaint herein upon William R. Lyon, he was the president or other head of the corporation defendant, the secretary or clerk to the same, the cashier, the treasurer, or a director, or managing agent. Testimony has been taken before me from which the following facts appear: The summons and complaint in this action were served on William Roscoe Lyon on May 23, 1889. No other service on the defendant is claimed by plaintiff. The defendant is a domestic corporation organized under the act known as the 'Business Corporation Act,' (Laws 1875, c. 611.) At the first annual meeting of the stockholders, held April 14, 1880, Mr. Lyon was elected a director 'to serve for one year from date.' At a meeting of the board of directors, held the same day, Mr. Lyon was appointed secretary of the company. He seems also to have been *ex officio* treasurer of the company. On the 26th of April, 1880, a meeting of the board of directors was held, at which the following resolution was adopted: 'Whereas, Charles T. Carnaghan, George H. Danforth, William Roscoe Lyon, and Edward M. Danforth, the only stockholders of this company, have proposed to transfer and surrender to this company all the capitalization of the

company in consideration of the transfer to them of all that certain leasehold
estate which was assigned and conveyed to this company by a deed of assign-
ment bearing date the 14th day of August, 1879, made by Charles L. Carna-
ghan, and recorded in the recorder's office of McKeen county, in the state of
Pennsylvania, in Miscellaneous Book J, 244, etc., on the 22d day of Decem-
ber, 1879, together with all the fixtures and appurtenances in any way con-
nected therewith, or belonging thereto, and also all the personal property of
every kind and description on the said leasehold premises, and all rights con-
nected therewith belonging to this company, including all oil produced from
the said property since the 1st day of April, 1880:   Resolved, that the said
proposition be, and the same hereby is, accepted, and the president is hereby
authorized and directed to execute in the name and as the act of this com-
pany, and to deliver to the said stockholders, upon the surrender by them of
all the stock of the company, an instrument of assignment, conveying and
assigning to them all the said leasehold estate and property above described;
and the president is specially authorized and instructed to affix to such instru-
ment the corporate seal of this company.'   The property mentioned in the
resolution was all the property of the company.   Pursuant to the resolution,
the president executed an instrument of assignment to the stockholders, as
provided by the terms of the resolution, and the property was delivered to the
stockholders.   That was the last meeting of the board.   There was never any
further meeting of the stockholders.   On the minute book of the corporation
there appears the following entry made by Mr. Lyon:

" 'NEW YORK, June 26, 1880.

" 'The last note of the Ex. & Pro. Oil having this day been paid, and there
being no more obligations of the company, or claims against it, and having
no assets or liability, the treasurer hereby resigns.

" 'WILLIAM ROSCOE LYON.'

"The by-laws of the company provide that the term of office of the directors
'shall be for one year.'   Mr. Lyon testified that he never exercised the func-
tions of director or treasurer subsequent to June, 1880, and that, at the meet-
ing of April 26th, 1880, the stock was all turned over to the treasurer, and
canceled, and pasted in the stock-book, and since then there has not been a
share of the stock outstanding.   Mr. Lyon further testified that at the close
of that meeting of April 26, 1880, Mr. Danforth, the president, said: 'Gen-
tlemen, now we are no longer stockholders.   We are no longer directors,
and as the board of directors we have met for the last time.   We have for-
ever dissolved.'   No entry of this, however, was made in the minutes further
than as above set forth.   Mr. Lyon deferred noting his resignation as treas-
urer until the 26th of June, 1880, because that was the day the last note bear-
ing the name of the company was paid.   Since then he has never acted in
any capacity whatever for the company.

"On this state of facts, the question arises whether Mr. Lyon was an officer
or director of the defendant corporation on May 23, 1889, so as to make the
service upon him on that date a valid service upon the company.   The ques-
tion is one giving rise to very considerable embarrassment.   Section 431 of
the Code of Civil Procedure provides that service of the summons upon a do-
mestic corporation 'must be made by delivering a copy thereof, within the
state, *   *   *   to the president or other head of the corporation, the secre-
tary or clerk to the corporation, the cashier, the treasurer, or a director or
managing agent.'   The statute under which this corporation was organized
provides that the by-laws of the corporation shall provide the number of the
directors, and their term of office, 'which shall not exceed one year,' (Laws
1875, c. 611, § 6.)   The statute further provides that the directors shall, at
their election 'and throughout their term of office,' be stockholders to at least
the extent of five shares, 'and shall hold their offices until their successors
are chosen.'   Section 10.   'When any vacancy shall occur among the direct-

ors by death, resignation, or otherwise, it shall be filled for the remainder of the year in such manner as may be provided for by the by-laws of such corporation.' Section 26. 'In case it shall happen at any time that an election of directors shall not be made on the day designated by the by-laws of said corporation, when it ought to have been made, the corporation, for that reason, shall not be dissolved, but it shall be lawful, on any other day within three months thereafter, to hold an election for directors, upon service of notice upon the stockholders thereof, respectively, in the manner provided in section 5 of this act; and all acts of directors shall be valid and binding as against such corporation until their successors shall be elected.' Section 27. It is quite clear that there was no legal dissolution of the company. The steps taken for that purpose were wholly ineffectual. 'An ordinary business corporation may cease to do business, and wind up its affairs, whenever a majority of the stockholders deem this to be advisable; but the franchises conferred upon the shareholders by the state are not extinguished by a mere cessation of business thus brought about. The company still continues to be a corporation in the eye of the law, and may sue and be sued in that capacity; and it is possible that a corporation which has voluntarily ceased to do business, and sold out its property, may, in certain cases, reorganize and begin its business anew, if this appear desirable to a majority of the stockholders.' 2 Mor. Priv. Corp. § 1004. 'The mere fact that a corporation has been without officers or organization, and has performed no corporate acts, during a number of years, does not put an end to its franchises, although this may be a good ground for declaring them forfeited by judicial proceedings. Thus it has been held that a corporation which had sold all its assets with the intention of putting an end to its business, whose officers had all resigned, and whose stockholders had all transferred their shares to a single person, was, nevertheless, not dissolved, and that its corporate existence could be ended only by judgment of forfeiture, or by a surrender accepted by the state.' Id. § 1011. See, also, *Kincaid* v. *Dwinelle*, 59 N. Y. 548. It follows, therefore, that this defendant corporation is still in existence, and is theoretically capable of suing and being sued. The question, however, remains whether Mr. Lyon had not ceased to be a director or officer before the service of the papers upon him. The authorities seem to recognize the right of a director to resign at his own pleasure. *Bruce* v. *Platt*, 80 N. Y. 379; *Blake* v. *Wheeler*, 18 Hun, 496; *Chandler* v. *Hoag*, 2 Hun, 613. It seems, too, from these authorities that it is not necessary that the resignation should be formally accepted, or that a successor should be elected, or that any entry should be made on the minutes of the board, in order to make the resignation effectual. Mr. Morawetz, in his work on Corporations, (section 563,) says: 'By accepting their appointment to office, the directors impliedly agreed to perform the duties which are incident to the office, so long as their agency lasts. But they may ordinarily terminate their agency, at any time, by resignation. This right seems to result from the implied consent of the corporation, for it is evident that the shareholders of a corporation would not desire the delicate duties which devolve upon directors to be performed by unwilling agents. Directors who wish to terminate their liability to perform the duties of their office should express their wish in an orderly manner, by resignation, so that new directors may be elected. But it seems that, if a director has tendered his resignation to the proper authority, he cannot be charged by reason of a failure to act as director thereafter, although the resignation may not have been accepted.' The statute under which this corporation was organized recognizes the right of a director to resign, and requires that the by-laws shall provide for filling such vacancy. It apparently implies that resignation *ipso facto* creates a vacancy in like manner as death. The provision that a director shall hold office until his successor is elected applies only to directors holding over after their terms of office have expired. In

*Squires* v. *Brown*, 22 How. Pr. 35, it was held that a trustee of a corporation organized under the general manufacturing act of 1848 may resign his trusteeship, and on his resignation his powers and duties as trustee cease. WOODRUFF, J., says, (page 44:) 'If a trustee of such a corporation, acting in good faith, desires to terminate his official term, I perceive nothing in the nature of his office which forbids his resigning. * * * The fourth section of the act expressly contemplates a resignation by a trustee, provides for the exigency, and so impliedly censures it. It enacts that "when any vacancy shall happen among the trustees by death, resignation, or otherwise, it shall be filled for the remainder of the year in such manner as may be provided for by the by-laws of said company." The power and right to resign the office of trustee is therefore, I think, clear, and such a resignation, in the very terms of the statute, creates a vacancy. With such resignation the powers of the resigning trustee cease, and it would seem a necessary corollary that his duties also cease.' In *Smith* v. *Danzig*, 64 How. Pr. 320, it was held that the directors of a corporation organized under the act of 1875 (the very act under which this defendant corporation was organized,) may resign; and it was further held that the directors of such a corporation, when they find that the corporation is insolvent; that its affairs are growing worse every day; that the danger is imminent that the remaining property will be wasted, leaving the bulk of its creditors unpaid,—may lawfully resign for the purpose of securing a fair and equal distribution of the corporate property among its creditors, and such resignation becomes effective to vacate the respective offices without the affirmative act of the corporation. This decision holds that the directors may resign in a body, but it seems to place the legality of such resignation on the ground 'that the motive and purpose of the resignations in question were proper.' Page 325. Mr. Morawetz, in the section already referred to, (1 Mor. Priv. Corp. § 563,) seems, likewise, to make the motive and purpose of the resignation a test of its legality. He says: 'It seems clear, also, that directors cannot terminate their agency, or accept the resignation of others, if the immediate consequence would be to leave the interests of the company without proper care and protection.' And again he says, at section 564: ' A distinction should be observed between the obligation of directors to act as agents or business managers of the corporation and their obligation to perform those ministerial duties which are necessary to perpetuate the corporate organization. Directors cannot divest themselves of their legal *status* as part of the corporate organization, except in a manner prescribed by law. If their term of office is fixed by the charter at a definite period they continue legally to be officers of the company, and are bound to call meetings, and do such other ministerial acts as are necessary to protect the corporate organization until their term of office has expired, or their resignation has been accepted by competent authority. They are bound to perform these duties, although their obligation to devote themselves to the active management of the company's business may have ceased.' No authorities are cited by Mr. Morawetz in support of these propositions. They would seem, however, to be founded on sound principles, as the directors of a corporation certainly owe some duty, not only to the stockholders, but to the state, and to the public generally, and ought not to be allowed to resign in a body, if the effect of the resignation, and if the purpose and object of it, were to prevent service of process. However this may be, I am of opinion that there was no legal resignation of the directors in this case. The only formal act of resignation appears to have been the resignation by Mr. Lyon of his office of treasurer. No formal resignations by the directors appear to have been made. The testimony is that, after the meeting of April 26, 1880, at which the resolutions for winding up the concern were passed, Mr. Danforth, the president, said: ' Gentlemen, now we are no longer stockholders. We are no longer directors, and as the board of directors we have met for the

last time. We have forever dissolved.' This seems to have been merely an expression of opinion on the part of Mr. Danforth. Whether the other directors acquiesced in it or not does not appear. Certainly something more formal than this is necessary in order to divest a director of his office and to relieve him from his liability as director.

"Under the circumstances, I am of the opinion that the directors of the company who were such on the 26th of April, 1880, still remain such, no election having since been held, and no successors having been elected, and no formal resignations having been made. The fact that the directors are not at present stockholders of the company, having surrendered their stock, is, in my judgment, immaterial. While the statute requires that the directors shall be stockholders, these directors still remain *de facto* directors, even though they may have nominally parted with their stock. In fact the nominal surrender of the certificates of stock is of slight consequence, since the property of the corporation was divided among the stockholders, and they still remain, to all intents and purposes, stockholders of the corporation; that is, the parties in interest in the corporation. The certificates are mere evidence of title, and the surrender of the certificates is of slight consequence on this question. What would have been the consequences if all the directors had formally and legally resigned, whether any service could then be effected upon any one which would be effectual to give jurisdiction against the corporation, or whether a receiver would then have to be appointed in order to give any remedy against the corporation or its effects to any creditor, are interesting and difficult questions. It is sufficient, however, to say in this case that, in my judgment, the questions do not arise. For the reasons already stated, I am of opinion that William Roscoe Lyon was a director of the defendant company *de facto*, and within the meaning of the Code of Civil Procedure, at the time that the summons and complaint was served upon him on May 23, 1889."

The order was denied and defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*G. L. Hastings*, for appellant. *J. B. Leavitt*, for respondents.

PER CURIAM. The order should be affirmed, with $10 costs and disbursements, on the opinion of the referee.

---

## *In re* DEPARTMENT OF PUBLIC PARKS.

### *In re* WATERS.

*(Supreme Court, General Term, First Department. June 6, 1890.)*

1. MUNICIPAL CORPORATIONS—PARKS—COMMISSIONERS' REPORT—REVIEW.

Under Laws N. Y. 1884, c. 522, which provides for the appointment of commissioners to acquire land for public parks in New York city and Westchester county, and which declares (section 9) that they shall be allowed for necessary clerk hire, surveys, etc., a sum allowed by the general term of the supreme court in the first judicial district, the approval of a surveyor's bill by the commissioners is not conclusive or final, but is subject to review by the general term.

2. SAME—SURVEYOR'S COMPENSATION.

The surveyor having charge of part of the work rendered a bill for $106,998 for his own services and that of his subordinates, which was approved by the commissioners. The city objected to the bill, and a hearing was ordered before a referee. It appeared that the land surveyed, in different localities, was 1,715 acres; that the descriptions furnished the surveyor were 980; that the time devoted to the work was 3 years and 9 months; and that the yearly salaries actually paid his subordinates was far below the amount charged the city by the surveyor. *Held*, that the referee's report allowing the surveyor $45,000 for his own services, and $24,550 for his subordinates, which witnesses for the city testified was a reasonable compensation, would not be disturbed, though the surveyor and two witnesses in his behalf testified that the bill rendered by him and approved by the commissioners was not excessive.