The facts appear fully in the following opinion of the referee:
William B. Hornblower
Referee — It is referred to me by an order entered herein on the 27th day of June, 1889, to determine and report to the court upon the question of fact whether at the time of the service of the summons and complaint herein upon William B. Lyon he was the president or other head of the corporation defendant, the secretary or clerk to the same, the cashier, the treasurer, or a director or managing agent. Testimony has-been taken before me from which the following facts appear:
The summons and complaint in this action were served on William Boscoe Lyon on May 28, 1889. No other service on the defendant is claimed by plaintiff. The defendant is a domestic corporation organized under the act known as the business corporation act, Laws 1875, chap. 611. At the first annual meeting of the stockholders, held April 14, 1889, Mr. Lyon was elected a director “ to serve for one year from date." At a meeting of the board of directors held the same day Mr. Lyon was appointed secretary of the company. He seems also to have been ex-officio treasurer of the company.
On the 26th of April, 1880, a meeting of the board of directors was held, at which the following resolution was adopted:
“ Whereas, Charles T. Oarnaghan, George H. Danforth, William Boscoe Lyon and Edward M. Danforth, the only stockholders of this company, .have proposed to transfer and surrender to this company .all the capitalization of the company, in consideration of the transfer to them of all that certain leasehold estate which was assigned and conveyed to this company by a deed of assignment bearing date the 14th day of August, 1879, made by Charles *1118 L. Carnaghan and recorded in the recorder’s office of McKeen county, in the state of Pennsylvania, in Miscellaneous Book J., pages 244, etc., on the 22d day of December, 1879, together with all the fixtures and appurtenances in any way connected therewith or belonging thereto, and also all the personal property of every kind and description on the said leasehold premises, and all rights connected therewith belonging to this company, including all oil produced from the said property since the 1st day of April, 1880,
“ Sesolved, that the said proposition be, and the same hereby is, accepted, and the president is hereby authorized and directed to execute in the name and as the act of this company, and to deliver to the said stockholders, upon the surrender by them of all the stock of the company, an instrument of assignment, conveying and assigning to them all the said leasehold estate and property above described; and the president is specially authorized and instructed to affix to such instrument the corporate seal of this company.”
The property mentioned in the resolution was all the property of the company. Pursuant to the resolution, the president executed an instrument of assignment to the stockholders as provided by the terms of the resolution, and the property was delivered to the stockholders. That was the last meeting of the board. There was never any further meeting of the stockholders.
On the minute book of the corporation -there appears the following entry made by Mr. Lyon :
“ New York, June 26, 1880.
“ The last of the Ex. and Pro. oil notes having this day been paid, and there being no more obligations of the company or claims against it, and having no assets or liability, the treas. hereby resigns.
“William Roscoe Lyoít.”
The by-laws of the company provide that the term of office of the directors “shall be for one year.” Mr. Lyon testified that he never exercised the functions of director or treasurer subsequent to June, 1880; and that at the meeting of April 26, 1880, the stock was all turned over to the treasurer and cancelled, and pasted in the stock book, and since then there has not been a share of the stock outstanding. Mr. Lyon further testified that at the close of that meeting of April 26, 1880, Mr. Danforth, the president, said:
“ Gentlemen, now we are no longer stockholders; we are no longer directors, and as the board of directors we have met for the last time; we have forever dissolved.”
No entry of this, however, was made in the minutes further than as above set forth. Mr. Lyon deferred noting his resignation as treasurer until the 26th of June, 1880, because that was the day the last note bearing the name of the company was paid. Since then he has never acted in any capacity whatever for the company.
On this state of facts, the question arises whether Mr. Lyon was an officer or director of the defendant corporation on May 23, *1119 1889, so as to make the service upon him on that date a valid service upon the company. The question is one giving rise to very considerable embarrassment.
Section 481 of the Code of Civil Procedure provides that service of the summons upon a domestic corporation “ must be made by delivering a copy thereof within the state * * * to the president or other head of the corporation, the secretary or clerk to the corporation, the cashier, the treasurer, or a director or managing agent.”
The statute under which this corporation was organized, provides that the by-laws of the corporation shall provide the number of the directors and their term of office, “ which shall not. exceed one year.” Laws 1875, chapter 611, § 6. The statute further provides that the "directors shall, at their election, “ and throughout their term of office,” be stockholders to at least the extent of five shares, “ and shall hold their offices until their successors are chosen.” Section 10. “ When any vacancy shall occur among the directors by death, resignation or otherwise, it shall be filled for the remainder of the year in such manner as may be provided for by the by-laws of such corporation.” Section 26. “ In case it shall happen at any time that an election of directors shall not be made on the day designated by the by-laws of said corporation, when it ought to have been made, the corporation,, for that reason, shall not be dissolved, but it shall be lawful, on any other day within three months thereafter, to hold an election for directors, upon service of notice upon the stockholders thereof respectively, in the manner provided in § 5 of this act; and all acts of directors shall be valid and binding as against such corporation, until their successors shall be elected.” Section 27.
It is quite clear that there was no legal dissolution of the company. The steps taken for that purpose were wholly ineffectual.
“An ordinary business corporation may cease to do business, and wind up its affairs, whenever a majority of the shareholders deem this to be advisable; but the franchises conferred upon the shareholders by the state are not extinguished by a mere cessation of business thus brought about. The company still continues to be a corporation in the eye of the law, and may sue and be sued in that capacity: and it is possible that a corporation which has voluntarily ceased to do business, and sold out its property, may, in certain cases, reorganize and begin its business anew, if this appear desirable to a majority of the shareholders.” 2 Morawetz on Corporations, § 1004.
“ The mere fact that a corporation has been without officers or organization, and has performed no corporate acts during a number of years, does not put an end to its franchises, although this may be a good ground for declaring them forfeited by judicial proceedings. Thus it has been held that a corporation which had sold all its assets with the intention of putting an end to its business, whose officers had all resigned, and whose stockholders had all transferred their shares to a single person, was, nevertheless, not dissolved, and that its corporate existence could be ended only by judgment of forfeiture, or by a surrender accepted. *1120 by the state.” Id., § 1011. See, also, Kincaid v. Dwinelle, 59 N.Y., 548.
It follows, therefore, that this defendant corporation is still in -existence, and is theoretically capable of suing and being sued. The question, however, remains whether Mr. Lyon had not ceased to be a director or officer before the service of the papers upon him. The authorities seem to recognize the right of a director to resign at his own pleasure. Bruce v. Platt, 80 N. Y., 379 ; Blake v. Wheeler, 18 Hun, 496; Chandler v. Hoag, 2 id., 613. It seems, too, from these authorities that it is not necessary that the resignation should be-formally accepted or that a successor should be elected, or that any entry should be made on the minutes of the board, in order to make the resignation effectual. Mr. Morawetz, in his work on corporations, § 563, says : “ By accepting their appointment to office, the directors impliedly agree to perform the duties which are incident to the'office so long as their agency lasts. But they may ordinarily terminate their agency at any time by resignation. This right seems to result from the implied ■consent of the corporation, for it is evident that the shareholders of a corporation would not desire the delicate duties which devolve upon directors to be performed by unwilling agents. Direotors who wish to terminate their liability to perform the duties of their office should express their wish in an orderly manner, by "resignation, so that new directors may be elected. But it seems that if a director has tendered his resignation to the proper authority, he cannot be charged by reason of a failure" to act as director thereafter, although the resignation may not have been accepted.”
The statute under which this corporation was organized recognizes the right of a director to resign, and requires that the bylaws shall provide for filling such vacancy. It apparently implies that resignation ipso fado creates a vacancy in like manner as death. The provision that a director shall hold office until his successor is elected, applies only to directors holding over after their terms of office have expired.
In Squires v. Brown, 22 How., 35, it was held that a trustee of a corporation organized under the general manufacturing act of 1848 m'ay resign his trusteeship and on his resignation his powers and duties as trustee cease. Woodruff. J., says, page 44: “If a trustee of such a corporation, acting in good faith, desires to terminate his official term, I perceive nothing in the' nature of his office which forbids his resigning. * * * The fourth section
of the act expressly contemplates a resignation by a trustee, pro-}vides for the exigency and so impliedly sanctions it. It enacts that: ‘ When any vacancy shall happen among the trustees by death, resignation or otherwise, it shall be filled for the remainder of the year in such manner as may be provided for by the bylaws of said company.’ The power and right to resign the office of trustee is therefore, I think, clear, and such a resignation, in the very terms of the statute, creates a vacancy.. With such resignation the powers of the resigning trustee cease, and it would seem a necessary corollary that his duties also cease.”
In Smith v. Danzig, 64 How., 320, it was held that the directors *1121 of a corporation organized nnder the act of 1875, the very act nnder which this defendant corporation was organized, may resign; and it was further held that the directors of such corporation, when they find that the corporation is insolvent, that its affairs are growing worse every day, that the danger is imminent that the remaining property will be wasted, leaving the bulk of its creditors unpaid, may lawfully resign for the purpose of securing a fair and equal distribution of the corporate property among its creditors, and such resignation becomes effective to vacate the respective offices without the affirmative act of the corporation. This decision holds that the directors may resign in a body, but it seems to place the legality of such resignation on the ground “ that the motive and purpose of the resignations in question were proper.” p. 325.
Mr. Morawetz, in the section already referred to, 1 Morawetz on Corporations, § 563, seems likewise to make the motive and purpose of the resignation a test of its legality. He says : “ It seems clear, also, that directors cannot terminate their agency or accept the resignation of others if the immediate consequence would Be to leave the interests of the company without proper care and protection.”
And again he says, at § 564: “A distinction should be observed between the obligation of directors to act as agents or business managers of the corporation and their obligation to perform those ministerial_duti.es which are necessary to perpetuate the corporate organization. Directors cannot divest themselves of their legal status as part of the corporate organization except in a manner prescribed by law. If their term of office is fixed by the charter at a definite period, they continue legally to be officers of the company, and are bound to call meetings and do such other ministerial acts as are necessary to protect the corporate organization until their term of office has expired or their resignation has been accepted by competent authority. They are bound to perform these duties, although their obligation to devote themselves to the active management of the company’s business may have ceased.” Ho authorities are cited by Mr. Morawetz in support of these propositions. They would seem, however, to be founded on sound principles, as the directors of a corporation certainly owe some duty, not only to the stockholders, but to the state and to the public generally, and ought not to be allowed to resign in a body if the effect of the resignation and if the purpose and object of it were to prevent service of.process.
However this may be, I am of opinion that there was no legal resignation of the directors in this case. The only formal act of resignation appears to have been the resignation of Mr. Lyon of his office of treasurer. Ho formal resignations by the directors appear to have been made. The testimony is that after the meeting of April 26, 1880, at. which the resolutions for winding up the concern were passed, Mr. Danforth, the president, said : “ Gentlemen, now we are no longer stockholders; we are no longer directors ; and as the board of directors we have met for the last time; *1122 we have forever dissolved.” This seems to have been merely an expression of opinion on the part of Mr. Danforth. Whether the other directors acquiesced in it or not does not appear. Certainly, something more formal than this is necessary in order to divest a director of his office and to relieve him from his liability as director.
G. L. Hastings, for app’lt; J. B. Leavitt, for resp’ts.
Under the circumstances, I am of the opinion that the directors of the company who were such on the 26th of April, 1880, still remain such, no election having since been held and no successors having been elected, and no formal resignations having been made.
The fact that the directors are not at present stockholders of the company, having surrendered their stock, is, in my judgment, immaterial. While the statute requires that the directors shall be stockholders, these directors still remain de facto directors, even though they may have nominally parted with their stock. In fact, the nominal surrender of the certificates of stock is of slight consequence, since the property of the corporation was divided among the stockholders, and they still remain, to all intents and purposes, stockholders of the corporation, that is, the parties in' interest in the corporation. The certificates are mere evidence of title, and the surrender of the certificates is of slight consequence on this question.
What would have been the consequences if all the directors had formally and legally resigned, whether any service could then be effected upon anyone which would be effectual to give jurisdiction against the corporation, or whether a receiver would then have to be appointed, in order to give any remedy against the corporation, or its effects, to any creditor, are interesting and difficult questions. It is sufficient, however, to say in this case that, in my judgment, the questions do not arise. For the reasons already stated, I am opinion that William Eoscoe Lyon was a director of the defendant company de facto and within the meaning of the Code of Civil Procedure at the time that the summons and complaint was served upon him on May 23, 1889.
Per Curiam.
The order should be affirmed, with ten dollars costs and disbursements, on the opinion of the referee.
Yan Brunt, P. J., Brady and Daniels, JJ., concur.