SNEAD et al. v. SCHEBLE et al.

'(Circuit Court of Appeals, Sixth Circuit. November 2, 1909.)

No. 1,937.

PATENTS (§ 286*)—SUIT FOR INFRINGEMENT—TITLE TO SUPPORT SUIT.

Where the owners of nearly the entire interest in a patent united in an assignment of the same to a corporation, purporting to convey the full title, which assignment was duly recorded, such assignors could not thereafter maintain a suit for infringement without making the corporation a party, or alleging and proving affirmatively either that the assignment never took effect or that the title had in some way revested; the corporation, although it had ceased to do business, not having been dissolved, and being still capable of suing and being sued under the law of the state of its organization.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 454; Dec. Dig. § 286.*]

Appeal from the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

Suit in equity by Harry V. Snead, Harry V. Snead, administrator of the estate of Harriet V. Snead, deceased, and George A. Boughton against Eugene V. Scheble, the Michigan Steel Box Company, William B. Fonda, Charles H. Ostrander, administrator of the estate of Jacob W. Cornwell, deceased, and Clara Cornwell. From a decree dismissing the bill, complainants appeal. Reversed.

This suit was brought in equity to enjoin alleged infringement of certain letters patent granted by the United States for an improvement in mail boxes, and to enforce an account and payment of gains and profits. The suit was filed March 30, 1907, in the court below. Harry V. Snead, one of the complainants, was the inventor. He made his application on February 5, 1890, and on the 7th of that month he assigned an undivided three-fourths interest in the invention to Robert B. Lewis, Harriet V. Snead, and William B. Fonda, each receiving one-fourth. The letters patent were granted in the usual form, numbered 428,968, to the four persons last named, for a term of 17 years from May 27, 1890. On September 6, 1890, Lewis and Fonda, by assignment recorded on the 9th of that month, transferred to Harry V. Snead an undivided three-eighths interest in the patent, leaving in the assignors each an undivided one-sixteenth. By assignment recorded September 10, 1890, H. V. Snead transferred to Jacob W. Cornwell an undivided one-eighth interest in the invention. By assignment dated March 23, 1892, recorded the following May 12th, Lewis conveyed his undivided one-sixteenth to George A. Boughton. As between the parties thus far named, the whole title to the patent on March 23, 1892, was vested in undivided shares in Harry V. Snead, George A. Boughton, Jacob W. Cornwell, and Harriet V. Snead; Lewis having parted with his entire interest. Six days later, March 29, 1892, by instrument recorded September 12, 1892, Lewis united with the other persons named, except Boughton, in transferring in terms the entire title to the patent during its full term to the New York Terminal Express Company, a corporation of New Jersey. The consideration named in the instrument was $1 and "other valuable considerations."

This suit was brought by Harry V. Snead, Harry V. Snead, administrator of the estate of Harriet V. Snead, deceased, and George A. Boughton, against defendant Scheble, alleged to be trading as the Michigan Steel Box Company, William B. Fonda, Charles H. Ostrander, administrator of the estate of Jacob W. Cornwell, deceased, and Clara W. Cornwell, heir at law to the estate of Cornwell, charging Scheble with infringement by making and selling mail boxes constructed according to the invention covered by the letters patent aforesaid. The reasons stated for making Fonda and the administrator and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

heir at law of Cornwell defendants were that Fonda could not be found, and the administrator and heir of Cornwell refused to join in the suit. The express company was not made a party, and its absence is sought to be excused on the ground that the assignment to it never became operative, and, on the contrary, it is claimed that the whole title to the patent is vested in undivided shares in Harry V. Snead, Boughton and Fonda, and the administrator of Harriet V. Snead, deceased, and the administrator and heir of Jacob W. Cornwell, deceased. Demurrer to the bill was sustained on the ground that the express company was a necessary party. Amendment to the bill was allowed "to the extent necessary to show fully the extinguishment of the express company's interest. * * * or by making the express company a defendant. * * *" Amendment was made to the fourth paragraph of the bill, averring in substance failure of consideration for the assignment aforesaid of March 29, 1892; that the corporation had gone out of business and the charter had been revoked; that by common consent the assignment had never been put into operation; and that it had been mutually abandoned, and the exclusive rights of the assignors had always been recognized by the express company. Thereupon answer and replication were made, and subsequently certain depositions were filed on behalf of complainants to support the amendment and to show a prima facie case under the patent. No other evidence was offered by either side. Later a motion was made by Scheble to suppress and strike from the record all evidence offered by complainants in support of the fourth paragraph of the bill and the amendment thereto; also to dismiss the suit. The motion was granted. The cause was brought here upon appeal, with numerous assignments of error.

S. E. Darby, for appellants.

G. P. Kirby, for appellees.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). Among the assignments of error, it is complained that the case should not have been disposed of on motion. But this need not be considered; for the decree of dismissal is final, and its soundness may be fairly tested by the familiar rules applicable to a demurrer to evidence.

The inquiry then is whether, unless the question of the express company's title to the patent should be otherwise disposed of, the company is an indispensable party. The failure to make it a party is sought to be justified upon the authority of Railroad Co. v. Trimble, 10 Wall. 367, 19 L. Ed. 948. The facts of that case of any present relevance were that the undertakings of Stone contained in the transfer of patent were in no respect observed or carried out, and, on the contrary, in spite of the assignment, by common consent of the parties it never went into operation; Stone never claiming any right under it, always recognizing Trimble's exclusive right, and acting in respect to it as the agent of Trimble and not as his joint owner.

It is conceded in the present case that at the date of the transfer to the express company the signers of the instrument of assignment were, according to the records of the Patent Office, the apparent owners of the entire patent, and they in terms transferred the whole title thereto. But Lewis had in fact a few days previously transferred his undivided one-sixteenth interest to Boughton, and the transfer was recorded within the statutory time; and no actual notice meanwhile appears to have been given to the express company of the assignment

to Boughton. The evidence does not show how or when the instrument purporting to assign the whole interest was delivered, if at all, to the express company; and it is not shown who caused the instrument to be placed of record in the Patent Office.

The latter assignment is silent as to the nature of the "other valuable considerations" mentioned in it; but the evidence is clear that the substantial consideration was to be the issue and delivery to the assignors of $10,000 par value of the corporate stock of the express company. There is evidence to the effect that a single certificate for that amount of stock was executed; but it appears that no delivery was ever made of the certificate, because of the discovery of the transfer from Lewis to Boughton and of Boughton's refusal to convey his interest until agreement could be made as to the amount of stock he should receive. Such an agreement was never made. Several of the assignors made demand for their portions of the stock, and refusal was made only because those entitled to the stock could not agree upon a distribution among themselves.

Meanwhile the express company entered upon a general express business in New York, and continued it for a period of 18 months. While it cannot be determined from the evidence when the express company was organized, yet it is plain that a board of directors was selected, and that the offices of president and secretary and treasurer were filled. Harry V. Snead, inventor of the patent, and claimant of the largest interest under it, was the company's manager of the box department from the time the company was "organized," as he testifies, until that department was discontinued. The company did not manufacture or sell mail boxes under the patent. The most that it did was to use boxes of that character, though those boxes appear to have been purchased of another express company, which apparently had the right to use them. It is worthy of notice that the transfer to the express company was not recorded until September 12, 1892, but that this was while the company was conducting business.

The finances of the company became involved at the expiration of the 18 months mentioned, and its assets and business were placed in the hands of receivers. Everything was sold in 1893 at receiver's sale, unless it be the patent in suit. Nothing appears in the record, however, of the proceedings or court in which such appointment and sale were made. All that is disclosed in respect of these matters is through the testimony of Snead. He stated that the patent was not sold; but this statement amounts only to an opinion.

The company does not appear to have chosen directors or officers, or to have carried on any business after the sale. The person who filled the office of president, and the one who filled the offices of secretary and treasurer are still living. How many of the directors survive is not shown. Not one of these officials, however, was called to testify. The corporation has not been formally dissolved, nor have any proceedings been taken to surrender its charter, or to have it declared forfeited.

Can the question of title to the patent in suit be safely determined upon facts like these, in the absence of the express company? True, as urged, no one who was ever connected with that company is assert-

ing any claim in its behalf. But an infringer of a patent, like any wrongdoer, is, when sued, entitled to the protection of an adjudication that will bind all those owning and controlling any interest in the right or property injured.

If, then, the title to the patent, in whole or in part, ever passed to the express company, it remains there so far as now disclosed. Though, as before stated, there is no evidence expressly showing that the instrument of assignment was ever delivered to the express company, or to show who caused the instrument to be recorded, yet the repeated demands of some of the assignors for delivery of their portions of the stock, and their failure for all these years to take steps looking to the annulment of the transfer or the removal of inference arising from the fact of record—although such inference is of doubtful weight (Standard Elevator Co. v. Crane Elevator Co., 76 Fed. 767, 22 C. C. A. 549)—signify a degree of acquiescence in the transfer which, we think, renders it improper to proceed in the absence of the express company, or at least until the question of its title to the patent has been determined.

The distinction between Railroad Co. v. Trimble and this case is that Stone and Trimble by positive acts consented and in effect agreed that the assignment should be abandoned and treated as inoperative, if not rescinded, while in the present case the only acts revealed after execution of the assignment indicate positive exaction on one side of complete performance by the other, and express willingness of the latter so to perform whenever those entitled to the stock should agree upon its distribution, and those acts do not indicate abandonment or rescission. All else is inaction, save only an implication that the assignors delivered the instrument of assignment and trusted the company to deliver the stock.

The fact that the express company has not for so long a period been active, either in business or in selecting successors to its official representatives, is not determinative of the question of title. Under the facts disclosed, the corporation is in existence; and, according to the law of the state of its origin, may still be sued. 1 Gen. St. N. J. pp. 924–925, tit. "Remedies against Corporation," §§ 87–90; United N. J. R. R. & C. Co. and Penna. R. R. Co. v. Hoppock, 28 N. J. Eq. 261, 264; Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 611, 13 Sup. Ct. 691, 37 L. Ed. 577; Bradley v. McKee, 5 Cranch, C. C. 298, Fed. Cas. No. 1,784; Heard v. Talbot et al., 7 Gray (Mass.) 113; Russell v. McLellan, 14 Pick. (Mass.) 63, 69; Evarts v. Killingworth Manuf. Co., 20 Conn. 447, 458; Kincaid v. Dwinelle, 59 N. Y. 548, 552; Carnaghan v. Exporters' & Producers' Oil Co., 57 Hun, 588, 11 N. Y. Supp. 172, 174; State ex rel. v. Merchant, 37 Ohio St. 251; Webb v. Moler, 8 Ohio, 548, 552; Brandon Iron Co. v. Gleason, 24 Vt. 229; Parker v. Bethel Hotel Co., 96 Tenn. 252, 270, 34 S. W. 209, 31 L. R. A. 706; State Nat. Bank of St. Joseph v. Robidoux, 57 Mo. 446, 451; Kansas City Hotel Co. v. Sauer, 65 Mo. 279, 288.

It is not intended, by anything said in this opinion, to intimate that the express company actually obtained title to an interest in the patent; but in view of what has been shown, and of the further fact that the

grant of the patent has expired since the commencement of this suit, it seems to us that the ends of justice might be better subserved by retaining jurisdiction of the cause for a reasonable time to permit complainants, if they desire, either to bring the express company into the case, if that can be done, or by otherwise having the question of its title determined. Clark v. Wooster, 119 U. S. 322, 325, 7 Sup. Ct. 217, 30 L. Ed. 392; Busch v. Jones, 184 U. S. 598, 22 Sup. Ct. 511, 46 L. Ed. 707; Carnegie Steel Co. v. Colorado Fuel & Iron Co., 91 C. C. A. 229, 165 Fed. 195.

The decree must be reversed, and the complainants given further opportunity to remove the defect as to parties, or otherwise submit to the dismissal of the suit without prejudice; and it is so ordered. It is further ordered that the costs of this appeal be divided between, and paid equally by, the complainants and the defendant Scheble.

NOTE.—The following is the opinion of Tayler, District Judge, on dismissal of the bill:

TAYLER, District Judge. This is an ordinary bill of complaint on a patent, alleging infringement. A demurrer was filed to the original bill on the ground, among others, of defect of parties, as it appeared that the New York Terminal Express Company, a corporation of New Jersey, was the owner of the patent. The bill recited that all interests in the patent, except a fraction belonging to one Boughton, were assigned to the New York Terminal Express Company "upon the promise of valuable consideration, and the promise of the fair and equitable observance of certain covenants, agreements, and undertakings, * * * which said promises of valuable consideration and fair and equitable performances and observances were not kept or fulfilled, and remain unkept and unfulfilled, whereby the said execution of the instrument of sale and conveyance aforesaid became and remains null and void and of no effect whatsoever, and as if the same had never been made."

Judge Sater sustained this demurrer on the ground that the pleading was not broad enough to meet the conditions named in Railroad Company v. Trimble, 10 Wall. 381, 19 L. Ed. 948, in which the presence of the defaulting assignee as a party was excused. Leave was then given to the complainants to amend their bill "within a reasonable time by the making of additional averments to conform to the Trimble Case to the extent necessary to show fully the extinguishment of the express company's interest as assignee, if they are able to do so, or by making the express company a defendant, as they may elect."

Accordingly, the complainants, on the 30th of September, 1907, filed an amendment to the bill of complaint, setting out at considerable length the grounds upon which they claimed that the rights of the New York Terminal Express Company, as grantee of the patent, had lapsed and vested in the complainants. Proofs were taken to support these allegations, as well as to make out the prima facie case on the patent.

A motion was filed by the defendants to "suppress and strike from the record all the evidence offered by the complainants in sustentation and support of the fourth paragraph of the bill and amendment thereto, for the reason that said evidence fails, as a matter of law, to sustain the allegations of said fourth paragraph as set out in the bill and amendment thereto, and that there is no sufficient evidence of record to sustain said paragraph." The fourth paragraph of the bill and amendment are the parts of complainants' bill and amendment which set out the circumstances under which they claim that the New York Terminal Express Company has no interest in the patent. They also move by the same motion for a dismissal of the suit, for the reason that it now appears from the evidence that the complainants and defendants are not the owners of the patent.

The case has been fully argued on briefs. Of course, if it appears from the proofs taken that the New York Terminal Express Company has the title, or an interest in the title, to the patent in suit, it is manifest that there is a de-

fect of parties, and, if a defect of parties exists at any period in the suit, it would be folly to continue the prosecution of the suit or compel the defendants to take testimony, when no final adjudication can be had on the merits. Even if what appeared to be a final adjudication could occur in favor of the complainants or of the defendants, it would not conclude the express company, if in fact it was the owner of the patent or had any such interest in it as would require that it be made a party.

The rule of law laid down by the Supreme Court of the United States in the case of Railroad Company v. Trimble, supra, is stated in the sixth proposition of the syllabus: "Where the owner of a patent granted a portion of his interest in it to another person in consideration of certain payments to be made by such person to third parties, and certain promises and agreements made by him, and such person never made any of the payments which he was thus required to make, and by common consent of the grantor and grantee the contract never went into operation in any way, because the grantee was unable to comply with any of his engagements, so that the grantor was compelled to pay and did pay the money which the grantee had agreed to pay, and the grantee during his lifetime never claimed any interest in the contract, but, on the contrary, always recognized the grantor's exclusive right, and acted as his agent in the patent, under a power of attorney, paying him a part of the profits for the privilege, held, after the grantee's death, that the agreement did not prevent the grantor's bringing suit for the infringement of the patent without naming the grantee."

The evidence introduced in support of the allegations of the bill respecting the relation of the express company to this suit falls very far short of meeting the requirements of the law as thus laid down in the Trimble Case. Not to mention other respects in which there is a failure to come up to the measure of the requirement there laid down, two conspicuous differences between the facts necessary and the facts which appear in this case are here referred to. In the quotation just made, these words appear: "And such person never made any of the payments which he was thus required to make, and by common consent of the grantor and grantee the contract never went into operation in any way." But this contract did go into operation in some way. It seems to have gone into operation to quite a considerable extent. To say that it never went into operation in any way is to deny the legal effect of every word of testimony which was offered in connection with it. The other quotation from the rule as laid down is: "And the grantee during his lifetime never claimed any interest in the contract, but, on the contrary, always recognized the grantor's exclusive right." This is exactly what the facts in the case do not show. The contrary appears. The grantee did not always recognize the grantor's exclusive right. On the contrary, it asserted its own dominion over the patent. The fact that the stock which was to be issued to the grantors of the express company was not issued is a mere incident, having no real relation to the question as to whether or not the corporation got a title. It did get a title, and, until its title is disposed of in some way by judicial determination conclusive upon it, no other person has any right to prosecute a suit for the infringement of the patent to which the corporation has the kind of title referred to.

The motion, therefore, is sustained on both grounds named in it, and an order may be entered accordingly.