## Wickliffe, &c. *vs* Ensor, &c.

### ERROR TO THE NICHOLAS CIRCUIT.

*Depositions. Notice. Possession. Instructions.*

JUDGE BRECK delivered the opinion of the Court.—Judge Simpson did not sit in this case.

THIS writ of error is prosecuted to reverse a judg-ment rendered in favor of Ensor, &c., defendants in an action of ejectment brought against them by Wickliffe and others.

The plaintiff deduced title under a patent to John Six and John Cockey Owings, and adduced testimony

**EJECTMENT.**

*Case.* 62.

*January* 29.

Case stated.

conducing to prove that it embraced the land sought to be recovered. The patent bears date February, 1793. The land in contest was also covered in part, by a grant to John Craig of Bottetourt county and John Craig of Fayette county, dated August, 1793; and in part by a grant to Jacob Myers, dated in 1789. The defendants claimed under these grants, and that their possession and that of those under whom they claimed, constituted a bar to the plaintiff's recovery, not only under the seven but the twenty years' statute of limitations.

As to the fraction covered by the grant to Myers, there seems really to be no controversy, there being no proof of any possession or entry except under that grant. The contest, therefore, is limited to the land common to the two grants of Six and Owings and the Craigs, and so far as the merits of the case are concerned, turns upon the time when possession was taken under these grants respectively, its continuity, duration and locality. But before we advert further to the facts, we will dispose of objections made on the part of the plaintiff, to portions of the testimony read and adduced upon the trial by the defendants.

1st. It is contended, that the Court erred in not excluding the depositions of Tobin, Sexton and Ingram. The record in reference to the exceptions taken to the depositions, is very confused, and evidently imperfect, resulting probably from the fact, that the bill of exceptions was not made out till a subsequent term of the Court after the trial, and when the Judge who presided at the trial was not upon the bench.

The first notice which we find in the record, of these depositions, or any objection to them, was after the plaintiff had closed his testimony, and when they were about to be read by the defendants in evidence to the jury. It may be inferred from what the record states as occurring at that time, that objections had been previously made to them, but when, or upon what ground, does not satisfactorily appear. But even conceding that exceptions had been taken at the proper time, and upon the grounds now relied on, still we are of opinion they were properly overruled.

An agreement that notice served on one of the parties where no specific mode is pointed out, is sufficiently answered by service in the legal mode.

It is contended that the leaving a copy of the notice with the wife of the lessor, Suddeth, in his absence, and explaining it to her, was not sufficient service of the notice upon him under the agreement of the parties, that notice might be served upon him, and should be good as to all the lessors. The objection is clearly unavailable. The agreement does not require any particular mode of serving notice upon him. It only contemplated that the service should be legal, and as is well settled, the leaving a copy with the wife at the residence of the husband and in his absence, and explaining it to her, is a legal service of the notice upon him.

2d, It is objected that the defendants had not been summoned, and that it was not satisfactorily shown that they were unable to attend Court. This objection is deemed equally untenable. Their own testimony, if there had been no other, clearly proves that it would have been unreasonable, in view of their age, infirmities and distance from the place of trial, to have required, or expected their personal appearance in Court.

But when the depositions were about to be read, the plaintiff again objected, and moved the Court to exclude them, upon the ground that they contained irrelevant and incompetent matter, and if the Court would not exclude them entirely, to purge them of all such incompetent and illegal testimony. As no exception was taken to any particular portion of these three long depositions, the motion might well, under the circumstances, have been overruled. But the Court excluded a portion of one of them, and overruled the motion as to the residue of that, and as to the other two.

Exceptions to depositions should be specific, not general.

It is now insisted that other parts of the depositions were illegal, and should have been also excluded. But in view of the time when this motion was made, and that this was the first evidence offered by the defendants, we think the Court was right in overruling it. At that stage of the proceedings, the Court could not determine what bearing seemingly objectionable portions of the depositions might have upon the case when taken in connection with other facts and circumstances

WICKLIFFE, &C.
*vs*
ENSOR, &C.

that might be proved. A motion at the proper time, to exclude or to instruct the jury to disregard portions of them, if in view of all the evidence deemed incompetent, would have been the proper mode of effecting the object.

The exception by the plaintiff to the interrogatory propounded by the defendats to their witness, Chiles, we think, should have been sustained; but as the record does not show that the interrogatory was answered by the witness, the plaintiff sustained no injury by overruling his exception, and the error is therefore unavailable.

The remaining questions arise upon the giving and refusing instructions to the jury. And in order to determine whether in that respect there was any error to the prejudice of the plaintiff, it will be necessary to advert more particularly to the facts.

The testimony on the part of the plaintiff, in addition to the facts before stated, conduced to prove an entry and possession by one McIntire under Six and Owings, as early as 1801, but outside the interference with Craig's claim. And that this possession was continued, with occasional intervals, till 1822. From that time till about 1835, no person resided upon the claim of Six and Owings, under them. The cabbins which had been built upon it, rotted down, and in the small improvement in the way of clearing, which had been made, grew up with brush and sapplings.

In 1835, the lessor, Wickliffe, claiming under Six and Owings, put a tenant upon the land, who made an improvement outside of Craig, and who occasionally took wood and timber from the lap.

That at that time no one resided upon the interference under Craig, except a man by the name of Bashan, who claimed as a purchaser, one hundred acres, by a marked boundary, and who had extended his improvements, and enclosed about ten acres outside of his boundary. That some five or six years before the commencement of this suit, the defendant, Ensor, who resided under Banks, upon the adjoining claim of Myers, extended his improvement within the interference.

The testimony of the defendants conduced to prove, that in 1799 or 1800, there was a small cabin or shanty upon the interference, 'and that it was rented by a man by the name of Findley, who resided upon the adjoining tract of Myers, and held under that claim, and also under Craig. That when at this cabin or shanty, Findley claimed it, and the possession under Craig, of their patent boundary.

That there was no improvement upon Six and Owings', and no possession till 1803 or 1804; and that at the time the first improvement was made, a man by the name of Parsons was living within the interference, and claiming under the Craigs.

That in 1805, Cuthbert Banks, the ancestor of part of the defendants, purchased out the improvements of Findley, &c., who resided at the Olympian Springs on Myers' claims, and took possession of those claims, claiming them as his own, and also claiming the survey of the Craigs, and in 1806 obtained from them a conveyance. That after Banks settled upon Myers', Parsons held under him, purchased from him in 1806, one hundred acres, by a marked boundary, within the interference, and including his improvements; and about 1812, sold to Basham. That Banks authorized Bashan to extend his improvements indefinitely, outside of his marked boundary, upon condition that he would keep off trespassers, and take care of his timber. That Basham as early as 1814, extended his improvements, and enclosed about ten acres outside his boundary, which have ever since continued in his possession, or those claiming under him.

In 1835, one of Myers' tracts and this tract of the Craigs, was divided by commissioners appointed for that purpose, between the representatives of Banks and the ten acre improvement by Basham, outside of his hundred acres, included in the lot of one of the defendants.

It moreover is in evidence, that after Banks sold to Parsons, he claimed the residue of Craig's survey—was in the habit of cutting timber on it, burning coal pits, and constructed two roads through it, till about 1814, when he sold one of the Myers' claims and moved off,

WICKLIFFE, &c.
vs
ENSOR, &c.

but left tenants in possession of the other. That Ensor, claiming under Banks or his representatives, and residing within Myers' claim, some five or six years before the commencement of this suit, extended his improvement into Craig's claim within the interference, as before stated.

Some other facts were proved, but they are not deemed material in reference to the questions arising upon the instructions.

The question presented by the 4th instruction, is in effect, whether the mere entry of a stranger, would give the patentee actual seizin and possession of all the land embraced by the patent, and not covered by an elder grant, or held in actual adverse possession. The Court declined so to instruct, but gave the instruction, with this modification—that the possession would extend that far, provided it was the intention of the party entering to take possession to that extent, but not otherwise. That the jury might infer such intention, but that the Court would not say to them as matter of law that they were bound to do so.

When a patentee puts a tenant in possession of his land without limiting that possession, it extends to the whole boundary of the patent; it is not true that where the entry is made without the assent of the patentee or owner, that the entry has that effect. (4 Dana, 458.)

The principle is settled, that when the patentee settles a tenant upon the land, without limiting his possession, the patentee is considered as matter of law, to be in possession to the extent of his patent boundary. But the same principle, we think, is not applicable to a stranger, who enters without title or license from the patentee, and the Court certainly did not err to the prejudice of the plaintiff, in telling the jury they might infer such intention, but were not bound to do so: Sowder, &c. vs McMillin's heirs, (4 Dana, 458.)

The 8th instruction moved by the plaintiff, is—that the erecting a shanty or other camp on the lap, and within Six and Owings' patent, not followed by actual residence, did not dispossess Six and Owings, and those holding under them, and does not bar this action.

The mere erection of a cabin or shanty upon land without use or occupation thereof, constitutes no such

This instruction the Court refused to give as moved, but instructed, that such building, a shanty, not followed by actual residence upon the ground, was no bar under the seven year's act of limitations, but refused the instruction as to the twenty year's act.

The last clause of the modification, we think, was calculated to mislead the jury. The proof conduced to show that a shanty had been erected upon the lap, and it might be inferred by the jury, taking the modification in connection with the instruction, that although the building the shanty, not followed by actual residence, was no bar under the *seven* year's limitation, that it would be under the twenty year's act or limitation.

The mere erection of a shanty by a person not residing upon the land, not followed by occupation, nor appropriated to any use or purpose, according to the proof in this case, would not be sufficient without some other act to constitute a continued possession, and bar the plaintiff's action.

The 13th instruction appears to have been modified in reference to the limitation of twenty years, but what the modification was is not stated.

This instruction is complicated, and the jury, without some modification, might be misled by it. It is certainly well settled, that different and distinct periods of possession cannot be added together so as to constitute a bar either under the seven or the twenty years limitation. But from the manner in which the instruction was drawn, it might be inferred that actual settlement and residence were necessary under the twenty, as well as the seven year's act. And we think it should not have been given without some modification.

The 15th instruction was also properly overruled as moved. It assumes, that if Grimes entered upon the claim of Six and Owings, claiming it to the extent of the boundary, the possession enured to the benefit of plaintiff, except so far as the land in contest was embraced in the actual enclosure of those claiming under the defendants. Grimes entered and improved outside the interference, and his possession would not, therefore, embrace any portion of the land within it, which was in the actual *possession* of those claiming under the Craigs. Whether such possession would or not be confined to the actual enclosure, depended upon facts, which it was the province of the jury to find, and which should not consequently have been assumed.

---

*Margin notes:*

WICKLIFFE, &c.
vs
ENSOR, &c.

continued possession as to bar an ejectment.

Different and distinct periods of possession cannot be added together to constitute a bar to ejectment, either under the seven or 20 years' limitation—it must be continued.

WICKLIFFE, &c.
vs
ENSOR, &c.

An entry under a junior patent, but not within the interference, tho' claiming to entries of the boundary, will not divest an actual possession held by another.

But the Court erred! in the modification, by instructing the jury that if they found from the evidence, that the defendants, or those under whom they claimed, had previously had the possession of the lap of the land in controversy, so as to take away the plaintiff's right of entry therein, either under the seven years or the twenty years limitation, then Grimes' possession would not have the effect given to it in the instruction.

The error in the modification consists in not defining the character and length of possession necessary to constitute a bar under each act, but leaving that question to be decided by the jury.

We are further of opinion, that the 2d instruction moved by the defendants and given with a modification, was misleading, and to the prejudice of the plaintiff.

It is hypothecated upon a state of fact, so far as it relates to the possession of Findley at the time Banks obtained possession of the Myers claim, unsupported by evidence. It is true, there is proof that there was a small cabin or shanty within the interference, as early as 1800, and some proof that it was erected by one of the Findleys. His declarations, therefore, while at it, although not residing in it, or upon the land, that he claimed the possession under the Craigs, we think, was competent. But his declarations that he built it, and in regard to the arrangement with the Craigs for taking possession, and the declarations of the two Findleys and Ramsey, that they had settled under Myers and the Craigs, and had taken possession of Craig's claim, were not legal evidence.

The declarations of a party whilst in possession of land, are competent to prove the character of the holding.

It is only when the party is in actual possession, that his declarations as to the manner of his holding are competent testimony. The declarations to which we allude, were not made upon the land, nor were the persons making them, so far as appears in the possession thereof. And besides, if they were, their declarations are not confined to the manner of their holding. The evidence as to the possession of Findley, and the only evidence is, that he built the small cabin or shanty, and claimed to be in possession under Craig. There is no evidence as to the character of the cabin or shan-

ty—that it was ever occupied or built, or intended to be occupied—or that it was ever appropriated to any use or purpose whatever. There is no proof that Findley was ever at it, or claimed it after the time he showed it to the witness, Sexton, in 1799 or 1800, or any testimony in regard to it after that time. Nor is there proof of any subsequent acts or act by either of the Findleys, evidencing possession in them, of the claim of the Craigs, or any part thereof. The proof, therefore, of any possession in them in 1805, or that Banks obtained possession from them of Craigs' claim at that time, we think was wholly insufficient to authorize the jury to find those facts, and upon which to base the instruction in question.

It follows that the 4th instruction moved by the defendants, and which is predicated upon the second, was also erroneous.

The 5th instruction, although correct, if applicable to the facts, seems to us to have been abstract, and ought not to have been given. We perceive no proof of any such extension of improvement within the interference, under the circumstances, and held for the period contemplated by the instruction.

It results that the judgment must be reversed, and the cause remanded, that a new trial may be had consistent with the principles of this opinion.

*R. Wickliffe, Sr. and Woolley & Kinkead* for plaintiff; *G. Davis and Apperson* for defendants.

*Margin note:* It is error for the court to give to the jury instructions upon abstract questions which the evidence does not conduce to render proper.