POND CREEK COAL CO. v. HATFIELD et al.

(Circuit Court of Appeals, Sixth Circuit. February 6. 1917.)

No. 2841.

1. APPEAL AND ERROR ☞1078(1)—REVIEW—WAIVER OF ERRORS.
    Contentions not discussed, either in appellant's brief or orally, must be treated as abandoned.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4256.]

2. EQUITY ☞87(1)—STATUTES OF LIMITATION—APPLICATION.
    The Kentucky statutes of limitation apply to equitable as well as to legal actions.
    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 242, 244, 395; Limitation of Actions, Cent. Dig. § 170.]

3. LIMITATION OF ACTIONS ☞19(1)—STATUTES—APPLICABILITY—LANDS—MINERAL INTERESTS—"REAL ESTATE."
    Under Ky. St. § 458, defining "real estate" as including all rights and interests in lands other than chattel interests, and in view of the practice in other actions, section 2505, prescribing a 15-year limitation upon actions for the recovery of real property, applies to an action to recover mineral interests in lands.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 73, 80, 84, 85.
    For other definitions, see Words and Phrases, First and Second Series, Real Estate.]

4. ADVERSE POSSESSION ☞42, 54—DURATION AND CONTINUITY OF POSSESSION.
    Ky. St. § 2505, prescribing a 15-year limitation upon actions for the recovery of real property, does not begin to run until adverse possession, and the bar is not complete unless the adverse possession is continuous for the full statutory period.
    [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 207–212, 271.]

5. MINES AND MINERALS ☞49—ADVERSE POSSESSION—NATURE OF POSSESSION.
    Although defendant, who purchased the surface rights upon land, at that time or soon thereafter formed the intention of holding the mineral interests, his claim thereto, unless open and notorious, was not adverse.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135.]

6: MINES AND MINERALS ☞49—ADVERSE POSSESSION—ESSENTIALS.
    Where the owner of the surface conveyed it, reserving the mineral rights, which he did not own, the mere use and possession of the surface was not enough to constitute adverse possession of the mineral rights.
    [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. MINES AND MINERALS ⬤═⇒49—ADVERSE POSSESSION—ESSENTIALS.
Where the owner of the surface rights in land, who was entitled to mine coal for domestic purposes, cut timber and mined coal, such acts constitute no adverse possession; it being presumed that the mining was in the exercise of his rights.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135.]

8. MINES AND MINERALS ⬤═⇒49—ADVERSE POSSESSION—ESSENTIALS—PAYMENT OF TAXES.
That the owner of the surface rights in land paid taxes on the lands containing the minerals does not constitute adverse possession of the mineral rights.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 135.]

9. COURTS ⬤═⇒375—RULES OF DECISION—AUTHORITY OF STATE LAWS—STATUTES OF LIMITATION.
State statutes of limitation are not binding on the federal courts, and in suits in equity in the federal courts relief is not barred by lapse of time, except as it amounts to laches or works an estoppel; hence an equitable suit in the federal District Court for the Eastern District of Kentucky will not be barred by Ky. St. § 2514, prescribing a 15-year limitation, though such period had elapsed, unless the delay amounts to laches or works an estoppel.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983.]

10. EQUITY ⬤═⇒72(1)—DEFENSES—"LACHES."
The question of "laches" does not depend, as does a statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did; and, the defense being an equitable one, the lapse of time must be so great and the relations of the defendant to the rights such that it would be inequitable to permit plaintiff to assert his rights.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 207, 210-213.

For other definitions, see Words and Phrases, First and Second Series, Laches.]

11. COURTS ⬤═⇒375—FEDERAL COURTS—RULES OF DECISION—STATE STATUTES.
For the sake of uniformity, the federal courts will accept state statutes of limitation whenever by so doing they are not required to abrogate their own principles.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983.]

12. EQUITY ⬤═⇒75—DEFENSES—LACHES.
Plaintiff's predecessor in title purchased the mineral rights in a parcel of land, defendant acting as agent upon commission. He did not discover that the original grantors had only a bond for, and not actual title to, a part of the rights conveyed. Thereafter defendant purchased from the grantors of plaintiff's predecessor the surface rights in such lands, and received a conveyance direct from the title holder, who had given a bond for title to the grantors of plaintiff's predecessor. The deed to defendant made no reservation of the mineral rights, and was executed and recorded more than 21 years before plaintiff filed a bill praying that defendant be declared to hold in trust for it the mineral rights. Held that, notwithstanding defendant's conveyance of the surface rights in such land, reserving the mineral rights, plaintiff and his predecessors could not be deemed guilty of laches in failing to earlier institute the action; there being no adverse possession, and it appearing that the defect in their title was not discovered by defendant himself when acting as agent, and that the right of action was discovered only a short time before suit, the

⬤═⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

conveyance to plaintiff a few months before its commencement being the only actual transfer of title.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 227, 228, 230, 233, 234, 239, 240.]

13. EQUITY ⟐324—ACTIONS—LACHES—PLEADING.

In cases of great delay in seeking relief, courts of equity on their own motion require plaintiff to allege and show affirmatively facts excusing the delay; the practice being justified on the theory of discouraging stale claims.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 635-640.]

14. EQUITY ⟐271—ACTIONS—AMENDMENTS—DEFENSES—LACHES.

In a suit to compel defendant to hold as trustee for plaintiff mineral rights in land, plaintiff, having failed to establish its excuse for a 20-year delay in instituting suit, applied for leave to file an amendment to the bill, setting up that there was no actual change of the ownership of the mineral rights on the part of plaintiff or its predecessors in title until the conveyance 6 months before suit begun, and thus there was no occasion for the examination of title, or of the public records, for any claim on defendant's part, that neither plaintiff nor its predecessors in title had ever heard rumors of the claim until within three years before suit was begun, and that plaintiff when it made the purchase had no knowledge thereof. *Held* that, it appearing that plaintiff was in equity entitled to the mineral rights, the amendment, which was denied on the ground that it did not excuse the delay, was proper, and should have been permitted.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 558-560.]

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Bill by the Pond Creek Coal Company against Anderson Hatfield and others. From decree dismissing the bill, complainant appeals. Reversed and remanded, with directions.

T. H. Harman, of Pikeville, Ky., for appellant.

P. K. Malin, of Ashland, Ky., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

KNAPPEN, Circuit Judge. Appellant filed its bill in equity, asking that appellees be declared to hold in trust for it the mineral rights in a tract of about 230 acres in Pike county, Ky., that plaintiff's title thereto be quieted, and for conveyance accordingly. The pertinent facts needing present statement are, in substance, these:

July 24, 1889, Arthur Bright, as trustee for others, purchased from the Maynard Brothers, and paid for, the mineral rights in a tract of 1,164 acres in Pike county, Ky. In this purchase Anderson Hatfield acted as agent for Bright, trustee, upon commission. He also took (as deputy clerk of the circuit court) the acknowledgment of the grantors, and, in connection with an attorney employed for the purpose, "ran over the title at the courthouse," finding no defects therein. This deed was at once recorded. It turns out that one Smith had sold to Williamson 230 acres of the 1,164-acre tract, making no conveyance, but giving title bond therefor. Williamson had sold the 230-acre tract

to the Maynards, but, not having received conveyance from Smith, did not convey to the Maynards, but made agreement to do so.

About six months after the conveyance from the Maynards to Bright, trustee, of the mineral rights in the 1,164-acre tract, viz. February 10, 1890, Hatfield purchased from the Maynards the surface interest in the entire 1,164-acre tract. In the course of this purchase the situation as to the legal title to the 230-acre parcel was for the first time discovered by Hatfield. Neither Bright, trustee, nor any one representing him had discovered it. The Maynards accordingly conveyed to Hatfield the entire 1,164 acres, and arranged that Smith should deed direct to Hatfield the 230-acre parcel; a portion of the purchase price being held back until Smith's conveyance should be made. Four days later Smith, by deed reciting Williamson's direction so to do, conveyed the 230 acres to Hatfield, who then paid to the Maynards the portion of the purchase price which had been held back, and the deeds from the Maynards and Smith were at once recorded. Neither deed contained an exception of the mineral rights. The Maynards understood they were selling to Hatfield only the surface rights, Hatfield paid for such rights only, and had in mind that the mineral rights had been, as previously said, purchased through him for Bright, trustee. By deeds made in 1902 and 1903 Hatfield conveyed the 230 acres to his children, reserving the mineral rights. The surface rights were, by mesne conveyances, sold to Vinson, who makes no claim to the mineral rights.

About two months before this suit was begun (which was December 12, 1911) Hatfield conveyed in form to his sons the mineral rights in the 230-acre tract; the deed not having been recorded until after this suit was commenced. Defendant Anderson Hatfield still claims the mineral rights, notwithstanding the deed to his sons, and it was conceded upon the hearing in this court that no one had obtained from Anderson Hatfield any rights superior to his. Bright, trustee, in 1893, conveyed the mineral rights in the entire 1,164 acres to Nash, trustee, who in 1902 conveyed to the Blackberry Coal Company. The latter on June 13, 1911, conveyed to Beale, trustee, who on November 17, 1911 (less than one month before this suit was begun), conveyed to plaintiff.

It appeared upon the hearing below that as to 55 or 60 acres of the 230-acre tract the Maynards had title superior to that derived from Smith, and thus that the mineral rights therein passed to Bright, trustee, under the deed of the Maynards. The District Court accordingly gave plaintiff relief as to the 55 or 60 acres. The court was of opinion, however, that as to the remainder of the 230-acre tract the suit was essentially for the specific performance of Smith's contract to convey and that, as nearly 22 years had elapsed between Smith's conveyance to Hatfield and the commencement of this suit, an action in the state courts of Kentucky would be barred by section 2514 of the Kentucky Statutes, which provides, for an action upon a "recognizance, bond, or written contract," a limitation of 15 years after the cause of action accrues; and that, if not governed by section 2514, the case would fall within section 2522, which provides a limitation of 10 years for actions

not specially provided for; and that the case fell within what was understood to be the rule that under ordinary circumstances relief will not be granted as against laches for a longer period than limited by state statutes, subject to exception in cases where by reason of fraud or concealment of the cause of action it has not been discovered, or where it would not have been discovered by reasonable diligence; and the court, being of opinion that Hatfield had not fraudulently concealed the right of action, that there was no showing of reasonable diligence on the part of plaintiff and its grantors in discovering the right of action, and that reasonable diligence would have disclosed it, dismissed the bill, except as to the 55 or 60 acres mentioned.

[1] Plaintiff's petition for rehearing and for leave to file a proposed amendment to the bill, by way of excusing the charge of laches, was denied. Defendant has not appealed. While plaintiff's appeal covers a claim that another part of the 230-acre tract should have been awarded plaintiff, on the theory that Hatfield was estopped to deny the Maynard's title thereto, this claim is not discussed either in brief or orally, and must be treated as abandoned. The only question now reviewable, therefore, is whether the District Court rightly held that plaintiff's laches had been such as to bar recovery as to the remainder of the 230-acre parcel.

As the case is presented here, it is not made entirely clear that plaintiff had lost the right to relief in the state courts of Kentucky. By section 2505 of the Kentucky Statutes actions "for the recovery of real property" are barred if not brought within 15 years after the right accrues. The District Court was of opinion that this action is not one for the recovery of real property. We are cited to no decisions to that effect. But as the question has not been discussed here, we content ourselves with these observations, for such bearing as they may have upon the ultimate question of laches:

[2, 3] The fact that the suit is in equity, rather than at law, cuts no figure; the Kentucky statutes of limitation apply to equitable as well as to legal actions. Clay's Adm'r v. Clay, 7 Bush, 95; Ferguson v. Railroad, 108 Ky. 662, 57 S. W. 460. The term "real estate" includes all rights and interests in lands other than chattel interests (Ky. Statutes, § 458; Anderson's Trustee v. Sterritt, 79 Ky. 499, 503), and necessarily embraces mineral rights. The section in question is not in terms confined to actions of ejectment. It is held applicable to an action for admeasurement of dower (Anderson v. Sterritt, supra; Bankston v. Mining Co., 95 Ky. 455, 25 S. W. 1105; McDanell v. Landrum, 87 Ky. 404, 9 S. W. 223, 12 Am. St. Rep. 500), which action by statute (Civil Code Ky. § 499), as well as at common law (Waters v. Gooch, 6 J. J. Marsh. 587, 22 Am. Dec. 108), may be in equity. In the Kentucky dower proceeding, as well as in the action here, the remedy is by conveyance. The section has also been held applicable to a suit for the protection of an easement of burial (Hook v. Joyce, 94 Ky. 450, 22 S. W. 651, 21 L. R. A. 96), as well as an easement of light and air (Ray v. Sweeney, 14 Bush, 1, 7, 29 Am. Rep. 388), to an action to supply a lost deed (Brandenburg v. McGuire, 105 Ky. 10, 13, 44 S. W.

96), and (impliedly) to the foreclosure of a vendor's lien upon real estate (Hitt v. Pickett's Adm'r, 91 Ky. 644, 11 S. W. 9).

[4] Hatfield took the legal title to the mineral rights with full knowledge that the equitable right thereto was in Bright, trustee, and so took such legal title subject to that equitable right in Bright and his successors in title, including plaintiff here. If section 2505 is applicable, action thereunder in the Kentucky courts would not be barred, for the statute does not begin to run until adverse possession (Ray v. Sweeney, 14 Bush, 1, 29 Am. Rep. 388); and the bar is not complete unless the adverse possession is continuous for the full statutory period (Wickliffe v. Ensor, 9 B. Mon. 253).

[5-8] No such adverse possession was established, and the District Judge so held. Although we have no doubt that Hatfield, at the time of his purchase, or soon thereafter, formed the intention to hold the mineral interests, his claim thereto, unless open and notorious, was not adverse, within the meaning of the law of adverse possession; and the evidence of such open and notorious claim during the statutory period is not satisfactory. The mere use and possession of the surface of the land was not enough to constitute adverse possession of the mineral rights, after Hatfield's conveyance of the surface with reservation of such rights. Farnsworth v. Barret, 146 Ky. 556, 561, 142 S. W. 1049. In fact, Anderson Hatfield never lived on the 230-acre parcel, and never improved it. Such residence and improvement as were had seem to have begun not earlier than 1902, which was only about 9 years before suit was begun. The mining of coal by Hatfield was not an assertion of adverse right to the minerals, for the coal was presumably mined for domestic purposes only, and the right to such mining was by the Maynards' deed to Bright, trustee, expressly reserved to the grantors and their successors.

It is equally clear that the cutting of the timber, which belonged to the owner of the surface, was not an assertion of adverse right against the owner of the minerals; and the payment of taxes upon the lands containing the minerals did not constitute adverse possession of the minerals.

But, treating this as an action to obtain specific performance of Smith's covenant to convey (and section 2514 applies to such an action —Cocanougher v. Green, 93 Ky. 519, 522, 20 S. W. 542), it does not necessarily follow that it would be barred in the Kentucky courts by the lapse of 15 years after the making and recording of Smith's deed to Hatfield. Smith did not refuse to convey, but had in fact conveyed to Hatfield in supposed conformity with his agreement. As against Hatfield, on the theory that he was obligated to carry out Smith's contract, the statute would not begin to run until plaintiff or its predecessors in title knew, or should have known, of the conveyance, and that Hatfield claimed the minerals under it. The questions of knowledge and diligence will be considered in connection with the defense of laches, to which we now come.

[9, 10] As recognized by the District Judge, the rule is well settled that state statutes of limitation are not binding upon the courts of the United States, and that in suits in equity in the federal courts relief

is not barred by lapse of time except as it amounts to laches or works estoppel. As said in Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 Sup. Ct. 258, 262 [40 L. Ed. 383]:

"The question of laches does not depend, as does the statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did."

Moreover, mere delay is not enough to preclude relief in equity, in the absence of such conditions as would, presumably, at least, make the assertion of right after such delay inequitable. In Halstead v. Grinnan, 152 U. S. 412, 417, 14 Sup. Ct. 641, 643 (38 L. Ed. 495), it is said:

"It [laches] is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them."

As said in Galliher v. Cadwell, 145 U. S. 368, 372, 12 Sup. Ct. 873, 874 (36 L. Ed. 738), the cases in which the defense of laches has been considered—

"proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in conditions or relations during this period of delay it would be an injustice to the latter to permit him to now assert them."

As said in Penn Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 698, 18 Sup. Ct. 223, 228 (42 L. Ed. 626):

"The reason upon which the rule is based is not alone the lapse of time during which the neglect to enforce the right has existed, but the changes of condition which may have arisen during the period in which there has been neglect. In other words, where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired, it will not exert its equitable powers in order to save one from the consequences of his own neglect."

As said in O'Brien v. Wheelock, 184 U. S. 450, 493, 22 Sup. Ct. 354, 371 (46 L. Ed. 636):

"Its application depends on the circumstances of the particular case. It is not a mere matter of lapse of time, but of change of situation during neglectful repose, rendering it inequitable to afford relief."

And as expressed in Northern Pacific Ry. Co. v. Boyd, 228 U. S. 482, 509, 33 Sup. Ct. 554, 562 (57 L. Ed. 931):

"But the doctrine of estoppel by laches is not one which can be measured out in days and months, as though it were a statute of limitations. For what might be inexcusable delay in one case would not be inconsistent with diligence in another and unless the nonaction of the complainant operated to damage the defendant, or to induce it to change its position, there is no necessary estoppel arising from the mere lapse of time. Townsend v. Vanderwerker, 160 U. S. 171, 186 [16 Sup. Ct. 258, 40 L. Ed. 383]."

In Schwartz v. Loftus (C. C. A. 8) 216 Fed. 320, 325, 132 C. C. A. 464, 469, the rule is thus stated:

"While the lapse of time is an element which courts consider in refusing or granting the defense of laches, time alone ordinarily is not sufficient to constitute the defense, but in addition thereto the situation of the parties must have so changed as to render the prosecution of the suit inequitable."

[11, 12] In this case defendants have been in no way injured by the delay in bringing suit, and the case is utterly barren of equity in their favor, unless, perchance, in the fact that Hatfield has from the time of his purchase from the Maynards paid the taxes on the land containing the minerals, presumably without separation of surface and mineral rights. But this payment furnishes, at the best, but slight equity in Hatfield's favor, in view of the fact that he had all the time the right to mine coal for domestic purposes, and did so, and as it does not affirmatively appear that the taxes were increased on account of the mineral rights. There are no intervening rights of third persons calling for protection, and there has been no change of situation or relations making relief to plaintiff inequitable. The instant case differs radically from Estep v. Kentland Company, 239 Fed. 617, —— C. C. A. —— (this day decided by us), in which case, in view of express elements of knowledge and estoppel, we held that plaintiffs had lost their right to complain.

There has, however, been "for the sake of conformity a disposition to accept the statutory regulations of the states prescribing the time within which suits may be brought. And this practice has ripened into a rule which will be enforced whenever by observing it the court is not required to abrogate its own principles, in which case it will protect its own jurisdiction." Ky. Coal, etc., Co. v. Ky. Union Co. (C. C. A. 6) 187 Fed. 945, 948, 110 C. C. A. 93; Godden v. Kimmell, 99 U. S. 201, 210, 25 L. Ed. 431; United States Fidelity, etc., Co. v. Union Bank, etc., Co. (C. C. A. 6) 228 Fed. 448, 452, 143 C. C. A. 30. Indeed, courts have frequently "enforced the doctrine of laches in favor of defendants where the lapse of time has been shorter than that prescribed by state laws, but where the peculiar circumstances gave rise to an equity which the court was bound to protect." Ky. Coal Co. v. Ky. Union Co., supra; Richards v. Mackall, 124 U. S. 183, 188, 8 Sup. Ct. 437, 31 L. Ed. 396; Alsop v. Riker, 155 U. S. 449, 460, 15 Sup. Ct. 162, 39 L. Ed. 218; Penn Mutual Life Ins. Co. v. Austin, supra; Patterson v. Hewitt, 195 U. S. 309, 319, 25 Sup. Ct. 35, 49 L. Ed. 214. And, on the other hand, where by fraud or concealment of the cause of action it has not been discovered, or would not by reasonable diligence have been discovered, a longer period for bringing suit than prescribed by the statutory limitations has been permitted. Ky. Coal, etc., Co. v. Ky. Union Co., supra, and cases there cited.

If plaintiffs' cause of action was not discovered, or by reasonable diligence should not have been discovered, until shortly before the commencement of suit, it was clearly entitled to relief. There is no showing that plaintiff actually knew of Hatfield's claim to the minerals. The principal contention is that plaintiff and its predecessors should

have known of defendants' claim through the constructive notice afforded by the records. But Bright, trustee, did not know that Smith held the title, and Hatfield cannot with good grace assert that Bright and his successors lacked diligence in failing to discover that fact; since both Hatfield and the attorney representing Bright, although searching the records to determine the title, failed to discover it. The record of the deeds from the Maynards and Smith to Hatfield was not, standing alone, compelling evidence of Hatfield's claim to the mineral rights, in view of the fact that it seems to have been not uncommon, in a conveyance of the surface (after deed of the mineral rights had been given), to make deed of the land which contained the minerals without excepting the latter; and there is more or less force (although not conclusive) in the suggestion that the reservation of the mineral rights in the deeds from Hatfield to his children is not necessarily inconsistent with a recognition on Hatfield's part that he did not own them. However, such reservation was less than 10 years before suit was begun.

[13] In case of great delay in seeking relief the courts have shown a tendency, of their own motion, to require the plaintiff to allege and show affirmatively facts excusing the delay. Badger v. Badger, 2 Wall, 87, 95, 17 L. Ed. 836; Godden v. Kimmell, supra; Richards v. Mackall, supra; Foster v. Mansfield, etc., Ry. Co., 146 U. S. 88, 99, 13 Sup. Ct. 28, 36 L. Ed. 899; Ky. Coal, etc., Co. v. Ky. Union Co., supra. This the trial judge held plaintiff had not done. The practice referred to is thought to be justified in the interest of peace by way of discouraging the assertion of stale claims, and perhaps on the theory that great delay would prima facie have a tendency to make the assertion of claim inequitable.

[14] Plaintiff's original bill did state a sufficient excuse for delay, for it alleged that Hatfield had made no claim to the mineral rights in question "until within the last few months, and until this plaintiff and its immediate vendor had purchased the same at a greatly enhanced price, when it was that defendant unlawfully and fraudulently conceived the idea of claiming * * * minerals for himself. * * *" Defendants' showing, however, was to the contrary of this allegation; and in view of the decisions cited we cannot say that the action taken was not right as the record then stood. But plaintiff immediately asked leave to amend by showing, what it claimed to be the fact, that there was no actual change of ownership of the mineral rights on the part of plaintiff and its predecessors in title until the conveyance from the Blackberry Coal Company to Beale, trustee, which was on June 12, 1911 (6 months before suit begun), and thus no occasion for examination of the title or of the public records for any claim on Hatfield's part; that in fact neither plaintiff nor its predecessors in title had any knowledge of Hatfield's claim until shortly before the bill was filed; that no one connected with plaintiff or its predecessors had heard even rumors of such claim until within 3 years before suit was begun; and that plaintiff had no knowledge of Hatfield's claim of ownership at the time it purchased (less than 1 month before suit), nor until a few days before suit was begun.

We think this amendment should have been allowed. It was in the interest of justice; the proposed showing, if made out, furnished a complete justification for the delay, and entitled plaintiff to the relief sought; to deny it would be to abrogate the principles on which the defense of laches is based. The refusal to allow the amendment was not made in asserted exercise of a discretion so to do, but because it was thought the proposed showing would not bridge the chasm. In this we think the learned District Judge was in error.

The decree must therefore be reversed, and the cause remanded, with directions to permit the filing of the proposed amendment, to give opportunity for the presentation of testimony in support of, and by way of defense to, the allegations contained in the proposed amendments, and generally upon the subject of plaintiff's excuse or lack of excuse for delay in bringing suit—a practice sanctioned by Noble v. Seery, 223 U. S. 65, 32 Sup. Ct. 194, 56 L. Ed. 353, as well as by the decisions of this court in Snead v. Scheble, 175 Fed. 570, 574, 99 C. C. A. 578, and Butterfield v. Miller, 195 Fed. 200, 210, 115 C. C. A. 152.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes