Bull v. Sevier, &c.

---

CASE 81—PETITION EQUITY—MAY 4.

# Bull v. Sevier, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. THE DEED OF AN INFANT is not void, but voidable merely.
2. THE DOCTRINE OF EQUITABLE ESTOPPEL IS APPLICABLE TO MARRIED WOMEN as well as to persons not under disability; therefore, a married woman may, by her own conduct, deprive herself of the aid of a court of equity.

An infant married woman executed to her mother a deed releasing to the mother her interest in certain real estate, in consideration of which the mother executed to the daughter a deed to certain other real estate. The only infirmity in the daughter's conveyance arose from the fact that

Bull v. Scvier, &c.

she was an infant. After the daughter arrived at age the mother, in compliance with the request of her daughter's husband, executed a new deed, correcting a call in the deed she had previously executed to her daughter. Thereafter the daughter and her husband sold the property thus conveyed by the mother and received the consideration therefor. They now seek by this action to recover the wife's interest in the property in which she released her interest by the deed which she ex-ecuted to her mother while she was still an infant. *Held*—That the daughter is estopped to claim an interest in the property in controversy. She can not retain the benefit received by her and yet claim, by reason of infancy, what she gave in return.

3. SAME.—The fact that the mother, after the daughter became of age, forgave her, at her instance, a debt, because of her release of her interest in the property in contest, is not sufficient to operate as a ratification by the daughter of her deed of release. It was not an act of sufficient dignity to do so, the daughter being still a *feme covert*.

HARGIS & EASTIN AND JOHN C. RUSSELL FOR APPELLANT.

1. The deed of an infant married woman is not void, but voidable only. (Phillips, &c., v. Green, 3 Mar., 11).

2. Such a conveyance may be ratified by the infant after arrival at full age, and slight acts of acknowledgment are sufficient for that purpose. (Phillips, &c., v. Green, 5 Mon., 345; Deason v. Boyd, 1 Dana, 45; Middleton v. Hodge, 5 Bush, 478.)

3. The right of an infant after attaining majority to disaffirm such contract must be actively exercised, and it can not thus be done without a return of the consideration received therefor.

4. Having received and retained the consideration, the grantor is estopped to disaffirm the contract—although a married woman. (Connoly v. Branstler, 3 Bush, 702; Wright v. Arnold, 14 B. M., 517; Davis v. Tingle, 8 B. M., 543; Baily v. Barnberger, 11 B. M., 114; Petty v. Roberts, 7 Bush, 418.)

BARNETT, MILLER & BARNETT AND W. K.· CARLISLE FOR APPELLEES.

1. To constitute a binding ratification there must be a previously existing agreement made during infancy, and the ratification must be in writing. (Gen. Stat., chap. 22, sec. 1, sub-sec. 2; Stern v. Freeman, 4 Met., 314.)

2. The contracts of a married woman are void and not the subject of binding ratification. (Robinson v. Robinson, 11 Bush, 178.)

3. An infant *feme covert* can not be compelled to make restitution unless she received the consideration paid and only to that extent. (Stewart v. Disher, Rep. Op. 1873.)

Bull v. Sevier, &c.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This is an unhappy family contest between the mother upon the one side, and the daughter and her husband upon the other.

In 1870 a valuable house and lot in the city of Louisville was conveyed to the appellant, Mary Bull, then the wife of John Bull. The *habendum* clause of the deed reads thus: " To have and to hold said property unto " the said Mary Ann Bull, with full and complete power " in her to dispose of the same, with the consent of her " husband, John Bull, either by deed or last will and tes- " tament; but in the event said property is not thus dis- " posed of by said Mary Ann, it shall pass and descend " to her children by said John Bull, share and share " alike."

The husband died in 1875, having four children by the wife, to wit: Edward, Robert, Mary, who thereafter married one Snively, and the appellee, Ella, who married John Sevier on June 11, 1877. When the father died, only Edward was of age.

February 13, 1885, the appellant brought this action, in form *quia timet*, against all of her children, they being then all of age, claiming the absolute fee in the property, and asserting that they, and especially Sevier and wife, were claiming some interest in it. Relief was asked against all of them, but all by answer disclaimed, and consented to the relief sought, save Sevier and wife. They by answer denied the appellant had any interest in the property save a life estate, and claimed a one-fourth remainder interest for the appellee, Ella Sevier. Their answer also set forth the date of their marriage,

and that on that day they had executed to the appellant a deed of release of all interest in the property, but that it had been procured by fraud and misrepresentation, was without consideration, and that the wife was then an infant. Its cancellation was asked, and their answer therefore made a counter-claim against the appellant. Thus this deed was first introduced into the record, and the appellees asked affirmative relief as to it. Thereafter the appellant relied upon it by an amended petition; and by reply set up that the appellees had ratified it by various acts and in various ways (enumerating them), after Mrs. Sevier became of age.

The issues were fully made up by extended pleading, and upon final hearing the lower court dismissed the petition *in toto*, not even giving relief as against those who had confessed the appellant's right to it. It held that the deed of release by Sevier and wife, of June 11, 1877, was absolutely void, and therefore incapable of ratification.

It is clear that Mrs. Sevier was not only then a married woman, but an infant. The contracts of a *feme covert* are, in general, void. As, however, she may bind herself by an executed deed, so she may, in like manner, ratify one made by her when an infant.

The infirmity in this conveyance arose from the fact that the grantor was an infant when it was executed, and not because she was then a married woman.

The deed of an infant is not void, but voidable. This is equitable to him, and has been generally regarded as the settled rule ever since it was declared, after much consideration, in Zouch v. Parsons, 3 Burrows, page

1794, now over a century ago, and in which Lord Mansfield, speaking with judicial eloquence, said it was a rule that the privilege of infancy, " which is given as a shield, " and not as a sword, never shall be turned into an " offensive weapon of fraud or injustice."

Kent says : " The doctrine of the case of Zouch v. " Parsons has been recognized as law in this country, and " it is not now to be shaken." (2 Kent, 236.)

Waiving the question whether the appellant was originally vested with an absolute fee, or whether, after the death of her husband, she had but a life estate in the property, we will proceed to consider the question whether the appellee, Ella Sevier, has since her arrival at majority ratified the deed of release made by her when an infant, or whether, more properly speaking, she is now equitably estopped from relying upon her infancy at the time of its execution and from setting up claim to an interest in the property.

It appears that the appellant, shortly after the death of her husband, learned that there was at least a cloud upon her claim to the absolute title to the property. She then owned some land upon Fourth street, in Louisville, and it is claimed by her that thereupon an understanding was had between her and her four children that she would give to each of them one hundred feet front of the last named property, and they were to release to her whatever interest they had, if any, in the house and lot, the children under age doing so as they became of age, or the daughters upon marriage, if it should occur before their majority, it being supposed that under the will of their father they were to be regarded as then of age as to their property.

Prior to the marriage of the appellees, one or two of the children had, in pursuance of this alleged arrangement, released their interest, if any, in the property, the deeds reciting the consideration as twenty-five hundred dollars cash, when in fact no such consideration passed.

The appellant claims that prior to the marriage of the appellees she informed Mr. Sevier of this arrangement; showed him a deed from one of the other children, and that both he and his then intended wife agreed to release her interest, if any, in the house and lot upon their marriage, the mother conveying to the daughter the one hundred feet of ground upon Fourth street.

The appellees were to start upon an extended European tour immediately after their nuptials. The mother, therefore, prepared before the marriage a deed of release to be executed by them for any interest the daughter had, if any, in the house and lot, the form of the conveyance being copied from a deed from one of the other children, and like it reciting the consideration as twenty-five hundred dollars cash, although it is clear no such consideration passed.

She also had her attorney prepare a deed from herself to Mrs. Sevier for the Fourth street property ; and immediately after the marriage ceremony was performed they were signed and acknowledged by the proper parties at their home, the county court clerk being there for that purpose.

The newly married couple at once took their departure, and were absent in Europe for about six months. Upon their return, family disagreement arose.

Upon the side of the appellees it is denied that there

was any such family understanding as to the property as above stated.

Mrs. Sevier does not testify; but her husband says that he understood the deed of release was executed in consideration of some indebtedness upon the part of his wife to her mother, with the nature of which he was unacquainted; and that he knew nothing of the execution of the deed to his wife to the Fourth street property for probably two years after their marriage. In short, it is claimed by the appellees that it was a gift by the mother to the wife; that the making of one deed did not enter into the consideration for the other; and that this being so, anything thereafter done by the wife, as to the Fourth street property, could not operate as a ratification of the deed of release or estop her from avoiding it.

It is needless to enter into a detail of all the evidence. It is almost impossible to account for all that was done by the mother and children, save upon the hypothesis that such a family arrangement as is claimed, existed.

Mrs. Sevier at her marriage was about twenty years old, and, of course, competent to understand and enter into it. Both deeds were executed at the same time, and the attorney who was present at their execution, testifies that both were then delivered to Mr. Sevier, he deliberately reading the one made to the mother. She also so testifies, and is to some extent sustained by the evidence of her son. Opposed to this testimony is the evidence of Mr. Sevier; and his statement that he knew nothing of the deed to the Fourth street property until perhaps two years after its execution, is contradicted by the statements

of his answer to the amended petition, and which was verified by him.

The conclusion is to our minds irresistible, that the making of the two deeds was but the consummation of a previous family arrangement, to which Mrs. Sevier was a party, and that the making of the one deed entered into the consideration for the other.

The fact that the appellant did not in her original petition rely upon the deed of release to her; also that the two deeds do not speak of an exchange of property; also that Mrs. Sevier in a letter to her mother, written after trouble arose between them, speaks of having given her mother her interest in the house and lot, together with the evidence of her husband, fail by all odds to balance the other testimony and circumstances appearing in the case, which show that the appellees must have known of the execution of the deed to the Fourth street property when it was executed, and that by previous understanding the making of the one deed entered into the consideration for the other.

This being the question upon which that of subsequent ratification by the wife or equitable estoppel as to her hinges, and our conclusion being adverse to her upon it, but one result can follow, owing to what has subsequently been done by her.

It turned out that the deed to the Fourth street property, by reason of a mistake in a call, did not inclose any lot and failed to convey any property. This being discovered after the wife became of age, her husband, as the evidence we think plainly shows, procured the execution by the appellant of another and correct deed.

It is true the action of the husband could not ratify the deed of his wife, made when an infant; but the evidence of the appellant, and which is uncontradicted, shows that her daughter also urged the making of the new deed. We do not mean to determine, however, that this action upon her part, she not being then *sui juris*, would amount to a ratification of her deed. It is unnecessary to the determination of this controversy to decide that it would or would not. It is merely recited as one step in the appellee's conduct leading to a point where she could no longer turn and ask relief of a court of equity.

The fact, too, that the mother, after the daughter became of age, forgave the latter at her instance a debt owing to her, because of the release the daughter had made of any interest in the house and lot, would not operate as a ratification of the deed. It was not an act of sufficient dignity to do so, the daughter being still a *feme covert*.

It, however, appears that after the deed of correction had been made, and not only after she had become of age, but after she had been made a *feme sole* by the judgment of a court, she and her husband sold and conveyed away the Fourth street lot, and received the consideration.

No offer to restore the *status quo ante* has been made by the appellees in this action; and, in fact, none can be made, as by this sale they put it out of their power to do so; and even if it be true, as claimed, that this did not operate as a ratification of her deed, although she was then *sui juris*, yet she is beyond question equitably

estopped from now claiming an interest in the house and lot in contest. The doctrine of equitable estoppel is applicable to married women as well as those not under any disability. It is far-reaching, and is applied when a party is seeking an inequitable advantage, which in view of his own conduct he ought not to obtain. It is sufficient if it will work a fraud to the other party. Actual fraud is not necessary. A married woman can by her own conduct deprive herself of the aid of a court of equity. She may so act that it will not allow her to say that what she has done is not binding upon her.

No fraud upon appellant's part is shown; and no reason exists which authorizes Mrs. Sevier to retain the benefit received by her, and yet claim by reason of infancy what she gave in return, even conceding that she had an interest in the house and lot.

To permit her to do so would convert the protection afforded by the law to those under disability into "an "offensive weapon of fraud or injustice."

Judgment reversed and cause remanded, with directions to render a judgment giving the appellant the relief asked in the original petition.