ESTEP et al. v. KENTLAND COAL & COKE CO.

(Circuit Court of Appeals, Sixth Circuit. February 6, 1917.)

No. 2874.

1. APPEAL AND ERROR ⬤⇒1009(1)—REVIEW—FINDINGS.

Findings of fact by the trial judge in an equity case will not be disturbed on appeal, unless the evidence preponderates against them.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970, 3978.]

2. WITNESSES ⬤⇒159(8)—COMPETENCY—TRANSACTIONS WITH DECEASED PERSONS.

Under Civ. Code Prac. Ky. § 606—2, forbidding a person to testify for himself concerning any verbal statement of or transaction with a deceased person, grantees, suing to reform a deed which reserved timber rights to the grantor, are incompetent to testify as to time of the inser-

tion of the reservation; the grantor being dead and having transferred the timber rights before his death.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 675.]

3. DEEDS ⊂⊃194(1)—VALIDITY—PRESUMPTIONS.

While there is a presumption that a deed is delivered at its date, intention alone will not constitute delivery, and some act showing a parting by the grantor with control over the deed is necessary; therefore delivery cannot be found where the grantor retained possession and control of the deed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 574, 575, 581–583, 634.]

4. COURTS ⊂⊃375—APPLICABILITY OF STATE LAW—LIMITATION OF ACTIONS.

State statutes of limitations are not binding on the federal courts in equity suits, and the question whether relief is barred depends only on whether complainant has been guilty of laches; the federal courts frequently finding complainant guilty of laches for delay for less than the period of limitations.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 983.]

5. REFORMATION OF INSTRUMENTS ⊂⊃32—LACHES.

Plaintiffs, when minors of 16 and 17 years, received a conveyance of land from their father; the deed being recorded nearly a year after its date. By interlineations in the deed a reservation to the grantor of the mineral rights in the land was inserted. In the year that the deed was recorded, plaintiffs learned of the sale of minerals, and they consented to a conveyance thereof 3 years thereafter. The mineral rights were subsequently transferred to an innocent purchaser, and some 10 years after the eldest of plaintiffs reached his majority they sued to reform the conveyance on the theory that the reservation was inserted by their father after delivery. Held that, in view of plaintiff's acquiescence in the conveyance and probable participation in the proceeds, they are barred by laches from attacking the deed.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 119–121.]

6. ESTOPPEL ⊂⊃90(2)—EQUITABLE ESTOPPEL—WHAT CONSTITUTES.

In such case plaintiffs are estopped from questioning the deed.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 244.]

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by Joseph H. Estep and another against the Kentland Coal & Coke Company and others. From a decree denying relief, complainants appeal. Affirmed.

C. M. Whitt, of Williamson, W. Va., for appellants.

J. F. Hager, of Ashland, Ky., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and HOLLISTER, District Judge.

KNAPPEN, Circuit Judge. Appeal from a decree denying relief in a suit in equity to reform a deed, etc. The case is this:

On June 23, 1898, William F. Estep and wife, the parents of plaintiffs, executed a deed to them of certain lands in Pike county, Ky., then belonging to the father. When executed, the deed contained no reservation of minerals. The deed was voluntary and without valuable consideration. The plaintiffs were at the time respectively 17 and

nearly 16 years of age; both were living with their parents, and so continued until the plaintiffs were respectively married. The deed was recorded June 5, 1899, nearly a year after its date. The record of the deed shows a reservation to the grantors of the mineral rights in the land, and the deed contains an interlineation to that effect in the father's handwriting. On March 21, 1899, and thus between the date and the recording of the deed, Estep and wife contracted with one Hellier for the sale of the mineral rights in the land at a price of 75 cents per acre. There is nothing to indicate that this was not at the time an adequate price for the minerals. In the following May, and thus still before the deed was recorded, a survey was made for ascertaining the acreage, and presumably the boundaries, of the tract containing the minerals; and on February 23, 1902, Estep and wife made deed to Hellier of the minerals, which were fully paid for at or before the time the deed was made. The father died May 22, 1903 (at which time one of the sons was 22 years old and the other nearly 21), leaving to his other children the surface rights in his remaining lands, from which he had meanwhile sold the minerals. Hellier died about three years later. On March 4, 1910, under decree of the probate court in the settlement of his estate, the minerals in question were sold to the defendant Alma Coal Company, who, in the following December, sold and conveyed them to the defendant Kentland Coal & Coke Company, at a price of $30 per acre, which was fully paid.

This suit was begun July 6, 1912, for the cancellation of the exception of the minerals contained in the deed, and an adjudication that plaintiffs were the owners of such minerals. The testimony upon the trial was taken in open court. The trial judge filed an opinion, in which he expressed himself as not satisfied that the deed was delivered to plaintiffs before the date on which it was lodged for record, and announcing the conclusions that plaintiffs knew of the sale of the minerals to Hellier and consented to the insertion of the exception in the deed, that plaintiffs carried the chains in the making of the survey in 1899, and were present when the transaction was closed and the money paid, and that the defendant Kentland Company was a purchaser for value without notice of any defect in the title. The conclusion was reached that plaintiffs are barred from relief by laches and estoppel.

[1] In these circumstances, the conclusions of the trial judge are accepted by us as correct, unless the evidence is found to preponderate decidedly against those conclusions. City of Cleveland v. Chisholm (C. C. A. 6) 90 Fed. 431, 434, 33 C. C. A. 157; Monongahela Co. v. Schinnerer (C. C. A. 6) 196 Fed. 375, 379, 117 C. C. A. 193; Pugh v. Snodgrass (C. C. A. 6) 209 Fed. 325, 326, 126 C. C. A. 251. There is no such preponderance; on the other hand, the evidence preponderates in favor of the conclusions of the trial judge.

[2] Of course the change in the deed, if made after its delivery, would not deprive plaintiffs of their title to the minerals. The evidence, however, makes it very uncertain, to say the least, that the delivery was made before the date on which the deed was recorded. Plaintiffs were both minors, the deed was without valuable considera-

tion, plaintiffs were not present at its execution, and while there was testimony by one of the plaintiffs of a delivery soon after execution, the testimony was held incompetent by the trial judge (and we think rightly) under section 606—2 of the Civil Code of Kentucky, which (with certain exceptions not important here) forbids a person to testify for himself concerning "any verbal statement of, or any transaction with, or any act done or omitted to be done by * * * one who is * * * dead when the testimony is offered to be given." Dunbar v. Meadows, 165 Ky. 275, 278, 176 S. W. 1167.

[3] The deed was kept in the father's deed box until by the father's direction one of the plaintiffs transmitted it for record. While there is a presumption more or less strong that the deed was delivered at its date (Ford v. Gregory, 10 B. Mon. 175, 180), intention alone will not constitute delivery; some act evidencing a parting by the grantor with control over the deed being necessary thereto. Dunbar v. Meadows, supra, 165 Ky. 277 et seq., 176 S. W. 1167; Justice v. Peters, 168 Ky. 583, 586, 182 S. W. 611.

While the trial judge states that "for the sake of the argument" he disposed of the case on the basis that the exception was inserted in the deed and in its record after the deed was recorded, the judge was apparently of a contrary opinion; and we think it the natural inference from the testimony that the interlineation was made between the date of the deed and its recording. There was testimony, apparently credible, that Hellier had heard, after the contract of February, 1899, for the sale of the minerals, but before payment was made, that the land had been deeded to plaintiffs on account of the father's trouble with a creditor, and that Hellier declined to carry out the contract unless the minerals were excepted in the deed, that the father agreed that th exception should be made, and that plaintiffs agreed thereto. The mother was living with one of the plaintiffs when the trial was had, but was not produced as a witness, nor was her absence explained. As well said by the trial judge:

"It is not likely that, with this title bond outstanding, he [the father] would have put to record a deed showing the title thereto in his children."

We have no trouble in agreeing with this conclusion. And not only is the conclusion that plaintiffs knew of and consented to the insertion in the deed of the exception of the minerals supported by direct testimony, but there was also apparently credible testimony from the same witness that plaintiffs were present when the deed was made, that it was read in their presence, and that they agreed that "if ever anything occurred afterwards they was to join in the deed when they became 21," and that there was talk that the father would pay to the boys some part of the consideration for the minerals.

That the Kentland Company is a purchaser in good faith is clear; the only suggestion to the contrary deserving mention is that the record itself, if consulted, would, because of the spelling and language of the exception, be seen not to have been made by the scrivener of the deed generally. But this suggestion does not overthrow the otherwise convincing nature of the evidence of good faith purchase. The ques-

tion then is: Are the facts and circumstances such as to justify a conclusion that plaintiffs are barred by laches and estoppel?

The pertinent situation may be thus summarized: Plaintiffs knew of and assented to the sale of the minerals in 1899 and to their conveyance in 1902; no complaint was ever made until 1912, when this suit was begun, at which time one of the plaintiffs was 31, the other nearly 30 years of age. Meanwhile Hellier had paid for the minerals, presumably with plaintiffs' knowledge; the father had died, as had Hellier; the value of the minerals had been greatly enhanced; and they had been sold to an innocent purchaser for value at a large price.

[4] In the view we take of the case it is unnecessary to decide whether, as alleged by defendants, plaintiffs' action is barred by section 2515 of the Kentucky Statutes, which imposes a limitation of five years upon "an action for relief on the ground of fraud or mistake," subject to the proviso in section 2519 that the cause of action shall not accrue until the discovery of the fraud or mistake, not to exceed in all 10 years from the time the fraud was perpetrated. See Combs v. Ison, 168 Ky. 728, 731, 182 S. W. 953.

In Pond Creek Coal Co. v. Hatfield (this day decided) 239 Fed. 622, —— C. C. A. ——, we state the rule to be well settled that state statutes of limitation are not binding upon the courts of the United States, and that in suits in equity in the federal courts relief is barred by lapse of time, only as the same amounts to laches or works an estoppel, and that while there has been "for the sake of uniformity a disposition to accept the statutory regulations of the states prescribing the time within which suits may be brought," ripening into a rule which will be enforced whenever by observing it the court "is not required to abrogate its own principles," yet that the courts have frequently enforced the doctrine of laches where the lapse of time has been shorter than that prescribed by state laws, but where the peculiar circumstances gave rise to an equity which the court was bound to protect. The latter proposition is abundantly sustained by the following decisions: Richards v. Mackall, 124 U. S. 183, 188, 8 Sup. Ct. 437, 31 L. Ed. 396; Alsop v. Riker, 155 U. S. 449, 460, 15 Sup. Ct. 162, 39 L. Ed. 218; Penn Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626; Ky. Coal, etc., Co. v. Ky. Union Co. (C. C. A. 6) 187 Fed. 945, 948, 110 C. C. A. 93; Patterson v. Hewitt, 195 U. S. 309, 319, 25 Sup. Ct. 35, 37 (49 L. Ed. 214). As said in the latter case:

"Indeed, in some cases the diligence required is measured by months rather than by years. * * * And in others a delay of two, three, or four years has been held fatal."

[5, 6] We think the instant case falls clearly within the rule of the cases cited. Plaintiffs' cause of action is utterly without equity. We think it barred by both laches and estoppel. Bull v. Sevier, 88 Ky. 515, 11 S. W. 506; Ayre & Lord Tie Co. v. Baker, 138 Ky. 494, 128 S. W. 346. Plaintiffs' minority at the time the change in the deed was made and the minerals sold is not enough to avoid the bar; for although they were not called upon, during their minority, to repudiate the transaction or to institute suit (assuming that the change was made

after delivery), the circumstances were such as to require them, in case they had a grievance, to act with reasonable diligence upon coming of age. This they did not do. Instead they waited nearly nine years after the younger had attained his majority, to the manifest injury of innocently acquired rights, and until several years after the deaths of the two persons having the best knowledge of the transactions, and this to the embarrassment of their opponents in litigation—acting at the last only, as is fairly presumable from the record, when prompted by the great advance in coal values.

The decree of the District Court is affirmed, with costs.

⬮⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes