## McGOVERN et al. v. McCLINTIC-MARSHALL CO.

(Circuit Court of Appeals, Second Circuit. November 10, 1920.)

No. 22.

1. **Reformation of instruments ⊜45(2)—Proof authorizing for fraud or mistake.**

   A written contract may be reformed in equity on the ground of fraud or mistake only on clear proof of the fraud or mistake or that complainant was deceived and injured thereby.

2. **Reformation of instruments ⊜45(2)—Changing contract for lump sum into quantity contract.**

   A finding sustained that defendants were not entitled to reformation of a contract by plaintiff to fabricate and furnish to defendants the structural steel for construction of a section of subway, for a lump sum, so as to change it into a quantity contract at a ton price, because plaintiff's proposal contained an estimate of the quantity "for erection purposes" for defendants' benefit which was greater than the quantity actually required, where it appeared that in such estimate allowance was made for variations and waste, as was proper and customary, that defendants had equal opportunity to make the computation, and that in making their bid on which they obtained the work they figured the cost of the steel at the lump sum given by plaintiff.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the McClintic-Marshall Company against Patrick McGovern and Charles L. Perrin. Judgment for plaintiff, and defendants bring error. Affirmed.

Thomas E. Conway and Thomas E. O'Brien, both of New York City, for plaintiffs in error.

Kellogg & Rose, of New York City (Abraham J. Rose and Alfred C. Pette, both of New York City, of counsel), for defendant in error.

Before WARD, ROGERS and MANTON, Circuit Judges.

MANTON, Circuit Judge. The plaintiff below has recovered a judgment of $35,100.96 damages and costs in an action brought to recover a balance due upon a contract between the plaintiff below and the defendants below for furnishing and fabricating, by the plaintiff below, structural steel for a part of route 61 of the Broadway-Fourth Avenue Rapid Transit Railroad which was constructed in the city of New York according to the plans and specifications furnished by the Public Service Commission.

The first cause of action of the complaint alleged the making of a contract whereby the plaintiff below agreed to furnish and fabricate the structural steel for this part of the subway as per plans and specifications of the Public Service Commission, for the sum of $173,000, and alleged that the plaintiff below duly performed and carried out the said contract on its part, and furnished, fabricated, and delivered all the structural steel required under said contract, and that the defend-

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant below accepted the same after inspection by the Public Service Commission. It is alleged that the amount sued for is the balance due.

In a second cause of action a claim for services rendered and materials furnished amounting to $2,538.36 is sued for. The answer admits all the allegations of the complaint, but sets up as a partial defense that the plaintiff below, having knowledge of the intention of the defendants below to make a bid for constructing route 61, solicited from the defendant below and contracted for the structural steel work required in the event that the defendants below obtained the contract. It proposed a lump sum contract of $173,000 and represented to the defendants below that it had accurately calculated the tonnage required by the Public Service Commission's plans and specifications, and that the amount required was 1,966 tons, divided as follows: 500 tons for subway; 1,310 for the elevated; and 156 tons for air shafts—making the price per ton about $88, which it is alleged, is a fair and reasonable market value therefor. It is alleged that the representations were made for the purpose of inducing the defendants below to rely thereon, and that the defendants below, relying thereon, after the award of the construction contract to them, entered into this agreement, for a breach of which this suit is brought. It is alleged that these representations were false in that the tonnage required was only 1,589 tons and only that number of tons was delivered; further, that 48 tons were discovered by the defendants below after the execution of the contracts to be unnecessary, and that the defendants below consented to disregard this amount of tonnage as a reasonable variation and agreed to accept 1,918 tons in fulfillment of the contract and to pay therefor $173,000 making a rate of $90.20 a ton, and that upon discovery that the actual tonnage was only 1,589 tons, the defendants below demanded that the plaintiffs below accept in fulfillment the sum of $143,409, representing a price of $90.20 per ton for 1,589 tons, and tendered to the plaintiff below the balance due and unpaid, which was then only $1,559.21. It is alleged that the plaintiffs below refused to accept said sum. The answer then prays that the defendants below be entitled to a reformation of the contract so as to make the price named $143,408.98, instead of $173,000. To this a reply was interposed setting forth a denial of this partial defense.

The district judge, as a chancellor, heard the proofs offered to sustain this defense on the plea for a reformation of the contract. He thereafter directed a judgment to be entered in favor of the plaintiff below.

The contract sued upon consists of a proposal contained in a letter of the plaintiff below dated July 12, 1916, and its acceptance a letter of the defendants below dated August 12, 1916. The offer of the plaintiff below was for the—

"new structural work covering the subway and elevated work of route 61 for the New York Public Service Commission * * * for $173,000 for which we will fabricate and furnish the new structural steel work in accordance with the plans and specifications prepared by the Public Service Commission, f. o. b. cars, our works, with present rate of freight allowed to New York."

The proposal included:

"The structural steel work in the subway from Vernon avenue to Hancock street, and in the elevated portion from abutment west of Marion street to the approach of the Queensboro Bridge, east of William street. * * * For the benefit of the erection we give subdivision of the weight:

Air shafts .............................................. 156 tons
Subway ................................................. 500 tons
Elevated work ......................................... 1,310 tons

"For your information the quantities and lump sum bid are based on the steel work shown as 'new work' only on the bidding plans. We have included none of the work shown on the dotted lines in the plans."

The defendants below were successful in having awarded to them this work for $4,494,797. The contract between the city of New York and the defendants below was executed on April 11, 1916. The next day, the defendants below wrote:

"We hereby accept your proposal to us dated July 12, 1916, for furnishing and fabricating the structural steel for route 61, part of the Broadway-Fourth Avenue Rapid Transit Railway. Said proposal includes and requires you to furnish structural steel for the

"Subway from Vernon avenue to Hancock street.

"Elevated portion from abutment west of Marion street to the approach of the Queensboro Bridge, east of William street.

"Shafts on the Manhattan side and Blackwell's Island shaft.

"Sump west of the Blackwell's Island shaft.

"All as per plans and specifications included in our contract with the Public Service Commission for the First District for constructing the subway route aforesaid. * * *

"All for the sum of one hundred and seventy-three thousand dollars ($173,-000), f. o. b. cars at your works, with freight allowed to include lighterage limits New York City."

It is not questioned by the defendants below that the structural steel was supplied for route 61, as required by the plans and specifications referred to in the contract. Bills were tendered on a per ton basis during the progress of the work and payments were made. This was pursuant to the terms of payment, to wit, cash within 45 days from the date of each shipment.

On July 12, 1917, the defendants below offered objection for the first time to the bill rendered, calling to the attention of the plaintiff below that tonnage was figured at $96 per ton, whereas the contract implied in the summary of a lump sum bid was $90.20, to which letter the plaintiff below replied that its estimating department had used a different pound price on different classes of the work, but that it was a lump sum contract and that this difference would be adjusted in the final invoice. Later, on October 5, 1917, the defendants below wrote to the plaintiff below requesting that a final bill be sent and stating that the original estimate was for 1,966 tons, and later revised as 1,918 tons at 4½ cents a pound, making a total of $173,000 or $90.20 per ton, and that such unit prices so given were based upon an estimate of 1,918 tons, and that the total tonnage would not exceed 1,607 tons, which, at $90.20, would bring the total to $144,000 instead of $173,000 when the estimated figure of 1,918 was used, to which letter the plaintiff below replied that the contract was on a lump sum basis and that it would not change it to a pound price job. There was con-

siderable correspondence thereafter, but the above was the attitude assumed by each and payment was not made. This action was then instituted.

[1] The liability of the defendants below is clear, and the judgment was correctly directed unless the evidence offered to support the partial defense required the judge below to reform the contract. The burden rested upon the defendants below to overcome the presumption that the contract was actually made and conformed to the intention of the parties and was not entered into by mistake or fraud. Atlantic Co. v. James, 94 U. S. 207, 24 L. Ed. 112; Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027. It is only in a clear case and only when the fraud is made to appear clearly that the court should cancel an executed contract or reform it in a court of equity, and, where false representations are relied upon, their falsity must be proved with a certainty, and it must appear that the claimant has been deceived and injured by them. If the proofs are doubtful and unsatisfactory, or if there is a failure to overcome this presumption by testimony plain and convincing beyond reasonable controversy, the contract will be held to express correctly the intention of the parties. Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027. The mistake or fraud claimed must be shown clearly, unequivocally, and convincingly. Chicago R. Co. v. Belliwith, 93 Fed. 437, 28 C. C. A. 358. A mistaken prophecy or an opinion or a mistaken belief relative to an uncertain future event is not sufficient. One who contracts and relies upon opinions or beliefs must necessarily take the risk of the conjecture and mistake which may be embodied in the agreement he makes. Chicago R. Co. v. Wilcox, 116 Fed. 913, 54 C. C. A. 147.

[2] A review of the happenings as disclosed by the evidence preceding the making of the contract indicates some conjecture and uncertainty as to the tonnage. Evidence was offered in support of the claim of the defendants below that the true intention of the parties was otherwise than expressed in the contract, also that there was a mistake in reaching the price expressed in the contract, also tending to show that the agent of the plaintiff below solicited the order for the sale in question, and that a lump sum bid was agreed upon providing the defendants below would accept such without competition, and that the plaintiff below would give the very lowest market price for the steel and would submit to the defendants below the shop estimates showing, in detail, how the prices that they bid had been reached. Upon these conditions, the defendants below say they entered into the contract. It will be observed that no such conditions were incorporated in the offer and acceptance which make up the contract. Further, it is said that in conversation with one of the defendants below the agent of the plaintiff below stated, over the telephone, that he had made a written memorandum while standing at the telephone and that the price would be $88 per ton, furnishing 1,966 tons of steel. The defendants below never received the shop estimates, although one of them claimed that, after complaining about it, they were promised to him. One of the defendants below testified that, after requesting a copy of the shop estimate, he did receive it, and that the paper showed a total tonnage

of 3,836,000 pounds, which, at $4.10, produced $157,000, and with the 10 per cent. added made up the total sum of $173,000. Later it appeared that there was a discrepancy amounting to 48 tons as to the estimated weight, and allowance therefor was made. It was also testified on behalf of the plaintiff below that prior to entering into the contract the defendants below did not figure the tonnage as required by the plans of the Public Service Commission, but depended upon the weight which was given by the plaintiff below, and this was their only means of determining the fairness of the price.

The defendants below offered further proof of an expert character that the plans and drawings furnished by the Public Service Commission were sufficient for an actual estimate of the tonnage to be made, and that the outside variation for a competent estimator to make would be limited to 5 per cent. Much of the testimony given by the defendants below was denied by the agent who brought about the contract. He denied soliciting the business, but stated, on the contrary, that the defendants below sought the plaintiff below to make a lump sum bid and afterwards a lump sum bid was submitted.

It was denied that a condition was imposed that the defendants below should accept the bid of the plaintiff below without competition, or that by reason thereof the very lowest price for steel was to be submitted to them, together with the shop estimate showing in detail how the price has been reached.

The agent of the plaintiff below testified that when one of the defendants below stated that he would need the weight for the erection, and that since the erection was to be made by the defendants below, the weight was given for their sole benefit, and that the quotations contained in the letter of acceptance above as to tonnage was for this purpose. The agent of the plaintiff below further denied that he stated the price was fixed at $88 a ton in estimating as to the lump sum. The engineer of the plaintiff below testified in detail as to how he made up his estimate of the steel required, amounting to 3,947,261 pounds, and also as to how he accounted for 767,529 pounds therein which did not appear in the shipping weight. The tabulation is as follows:

| | | |
|---|---:|---:|
| Original estimate | | 3,947,261 lbs. |
| Shipping weight | | 3,179,732 " |
| | | |
| Difference | | 767,529 lbs. |
| Material saved in detailing | 148,580 lbs. | |
| Material estimated longer than required | 92,545 " | |
| Deductions due to use of old material | 75,260 " | |
| Material lost in fabrication | 68,760 " | |
| Mill underrun | 8,996 " | |
| Error in estimate | 12,300 " | |
| Material added to take care of condition of uncertainty of old work | 180,000 " | |
| Difference due to 5 per cent. variation in estimating | 119,071 " | |
| Material estimated but not furnished | 87,270 " | 792,782 lbs. |
| | | |
| Excess | | 25,253 lbs. |

It was upon these contingencies that the plaintiff below figured in making its lump sum bid, and it is stated the bid was made up as care-

fully as could be done under the plans given to the plaintiff below and in the time allowed. The engineer testified that he believed the bid to be true and honest, and that it was necessary for him to take into consideration these contingencies together with the broad interpretation of the specifications, which was permitted to the engineers who passed upon the work for the Public Service Commission.

There are some other circumstances which establish abundantly the claim of the plaintiff below that the bid was for a lump sum price and the parties so intended it, and that there was no mutual mistake by either of the parties, or misrepresentations by the plaintiff below.

In addition to the presumption that the contract was fairly executed and represents the intention of the parties, there was no evidence to indicate that it was hastily drawn or that opportunity was not afforded for deliberate action and a full consideration and understanding of its terms. After negotiations were commenced for the submission of a bid, it was eight days later before the bid was submitted, and it was not until a month later that the bid was formally accepted by the defendants below. The figure of $173,000 was used by the defendants below in their bid to the city. The estimate sheets offered in evidence indicate that the work was estimated in the ordinary course of business of the plaintiff below in its estimating department, by men it had employed for this class of work. The allowances which were made for contingencies seem to have been proper and usual. It also appears that the plaintiff below submitted a similar bid to a competing bidder for the city's work. And it is expressly provided in the letters of acceptance of the bid that the tonnage quoted was for the purpose of erection. Undoubtedly this was submitted as an accommodation to the defendants below for the defendants below performed this work.

This evidence presented a question of fact for the District Judge. Although the findings of fact of the judge sitting in equity are not conclusive on us on appeal, they are presumptively correct and persuasive unless an error of law or the finding is clearly against the weight of the evidence. Such findings will not be disturbed. This rule is especially applicable where the evidence was heard orally by the chancellor and he had a chance to observe the witnesses and their demeanor while testifying, and thus be able to determine their credibility and the weight to be given to their testimony. U. S. v. Grasscreek Oil & Gas Co., 236 Fed. 481, 149 C. C. A. 533; Espenschied v. Baun, 115 Fed. 793, 53 C. C. A. 368; Estep v. Kentland Coal & Coke Co., 239 Fed. 617, 152 C. C. A. 451. After entering into a solemn contract assuming obligations, where opportunity was afforded the defendants below to avail themselves of estimating to determine the tonnage required, which was equal to that of the plaintiff below and as available to them, they should not now be relieved of their obligations in a court of equity because of their inattention or carelessness.

In Slaughter v. Gerson, 80 U. S. (13 Wall.) 379, 20 L. Ed. 627, it was said:

"Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will

not be heard to say that he has been deceived by the vendor's misrepresentations."

Apparently the defendants below are a substantial contracting firm which succeeded in obtaining a very large contract from the Public Service Commission, and are not in a position to readily complain that they have been overreached by the plaintiff below. They willingly signed an acceptance of a lump sum bid, and if they did that, without examining the plans and determining the amounts required by themselves, their failure so to do cannot now be said to be a mistake or an imposition upon them perpetrated by the plaintiff below.

The judgment is affirmed.