### ROSE et al. v. UNION GAS & OIL CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   March 10, 1924.)·

No. 3953.

1. **Mines and minerals ⬪⟹55(4)—Deed held not to reserve to grantor right to execute lease that would be valid after his death; "control,"**

Where grantor conveyed land to his sons by deed providing that grantor was to have full control over the land, mineral, oil, timber, etc., during his lifetime, *held*, that grantor did not reserve the right to execute an oil lease that would be valid as against his grantees after his death; the word "control" not importing an absolute or even qualified ownership, but being synonymous with superintendence, management, or authority to direct, restrict, or regulate (citing Words and Phrases, First and Second Series, "Control").

2. **Deeds ⬪⟹143—Reservations strictly construed against grantor.**

Where a deed grants an estate in fee simple, any restriction or reservation in the deed must be strictly construed against grantor.

3. **Infants ⬪⟹55—Infant not estopped from disaffirming by delay that worked no prejudice.**

Delay for more than 2½ years after lessor had arrived at full age in disavowing a lease executed by him when an infant, that worked no prejudice to lessee or his assignee, *held* not to estop lessor from disavowing the lease.

4. **Courts ⬪⟹375—Equity ⬪⟹87(2)—State statutes of limitation not binding on federal equity courts; delay for less than statutory period may prevent relief.**

While state statutes of limitation are not binding on federal courts in equity, they are usually enforced when not violative of the federal principle; but complainant may be guilty of laches, working an estoppel, by reason· of delay for less than the statutory period.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochrane, Judge.

Suit by C. C. Rose and ·another against the Union Gas & Oil Company and another. From a decree dismissing the petition, plaintiffs appeal. Reversed and remanded, with directions.

This appeal involves the question of the validity of an oil and gas lease, in so far as it affects that part owned by C. C. Rose of a 250-acre tract of land described therein on Keaton's fork of Big Blaine creek, in Johnson county, Ky. This oil and gas lease was executed on February 9, 1916, by T. C. Rose, C. C. Rose, J. M. Rose, and John F. Rose, the wives of such of them as were then married joining therein upon the entire tract of 250 acres, to A. C. Albin, for a period of 10 years, or as long as oil and gas shall be found in paying quantities thereon. The ·lease further provided that it should be

⬪⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

null and void if no well was commenced on the property within 12 months from the date thereof, unless the lessee should thereafter pay at the rate of 10 cents per acre for each year drilling should be delayed. It was further provided that the rentals might be paid by depositing them to the credit of the first party in any bank doing business in Elaine, Ky. Prior to the 9th of February, 1918, A. C. Albin transferred and assigned this lease to the Union Gas & Oil Company.

T. C. Rose, one of the grantors in said lease, was on and prior to the 11th day of August, 1913, the owner in fee simple of this 250 acres. On that date he deeded to each of his three sons, C. C. Rose, J. F. Rose, and John F. Rose, separate parcels comprising the entirety of said tract. Each of these deeds, including the deed to C. C. Rose, contained the following: "The conditions in this deed are that said T. C. Rose is to have full control of said land, mineral, oil, timber," etc., "his lifetime."

No well was drilled the first year, nor was any rental paid or tendered at the end of that year. Shortly prior to the end of the second year, February 9, 1918, the Union Gas & Oil Company made a deposit of funds in the Bank of Elaine, of which C. F. Osborn was cashier, for the purpose of paying the rentals accruing on the separate tracts of land in that vicinity upon which it held leases. C. F. Osborn, as such cashier, had authority to draw checks against this deposit payable to the order of the different lessors. On or about the 9th day of February, 1918, C. F Osborn mailed a check for $25, payable to T. C. Rose, out of the funds so deposited by the said Union Gas & Oil Company for the rental of this land for the second year of the lease, which check T. C. Rose refused to accept and returned the same to Osborn. On or about the 4th day of February, 1919, Osborn mailed to T. C Rose another check for $25 to pay these rentals for the third year, which check was also refused and returned by T. C. Rose. T. C. Rose died on June 12, 1919. On the 26th day of January, 1920, Osborn deposited $25 to the credit of John Rose, one of the sons, who owned a separate part of this tract, for rental of the T. C. Rose farm for the fourth year, ending February 20, 1920, which deposit has never been accepted or withdrawn by John Rose. On February 14, 1921, a check of the Union Gas & Oil Company was placed to the credit of T. C. Rose in the Bank of Elaine. At that time T. C. Rose had been dead about two years, and the credit still remains on the bank's books.

At the time this lease was executed by T. C. Rose, C. C. Rose, and others for the entire 250 acres, of which the land owned by C. C. Rose was a part, C. C. Rose was a minor, 19 years of age. On February 9, 1918, he was attending school at Louisa, Ky., and in July of that year he joined the navy, where he remained until July, 1919. Neither before nor after his father's death were any rentals ever paid or tendered to him for the acreage included in the separate part and parcel of this 250-acre tract owned by him, nor did he receive any part of the $1 consideration paid for the lease. On the 10th day of July, 1920, C. C. Rose executed and delivered an oil and gas lease upon the separate part of the 250 acres of land owned by him to J. M. Cyrus, who commenced the drilling of a well December 10, 1920. On November 16, 1920, C. C. Rose notified the Union Gas & Oil Company that he refused to ratify his act in signing said lease to Albin while he was an infant, and expressly disavowed the same. Later, and before December 20, 1920, he again notified the Union Gas & Oil Company of his disavowal of the Albin lease, and that he had executed a lease to Cyrus covering the same premises. Neither at this time nor when this suit was begun had the statutory period elapsed for bringing actions to recover this property conveyed during the plaintiff's minority.

The record further discloses that a petition in equity to cancel the Albin lease, verified on the 27th day of November, 1920, was filed by C. C. Rose and J. M. Cyrus against the Union Gas & Oil Company and A. C. Albin in the Johnson circuit court of Kentucky, but the record does not disclose the exact date this petition was filed or the proceedings to remove this cause to the United States District Court; but it does show that a certified transcript of the record in the Johnson circuit court was filed in the federal court on January 31, 1921. After C. C. Rose had served the notices of disavowal of

this lease upon the Union Gas & Oil Company, and after Cyrus had commenced the drilling of a well upon this land, and perhaps after the commencement of the suit in the Johnson circuit, the Union Gas & Oil Company, on December 20th, commenced the drilling of a well which when completed produced a small quantity of oil. There is practically no dispute as to these facts. The only controversy in the evidence relates to the time that tender was made of the rentals to T. C. Rose during his lifetime and to the respective owners of the separate parcels of this 250-acre tract after the death of T. C. Rose. A decree was entered in the District Court, dismissing the petition, at cost of plaintiffs.

John L. Smith, of Catlettsburg, Ky. (Martin & Smith, of Catlettsburg, Ky., and Fred M. Vinson, of Louisa, Ky., on the brief), for appellants.

Homer E. Holt, of Huntington, W. Va. (Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] It is claimed on the part of the appellees that T. C. Rose, under the conditions and reservations in his deed to C. C. Rose, had authority to lease this land for oil and gas for 10 years, or any other term; that the signature of C. C. Rose to this lease was wholly unnecessary; that the death of T. C. Rose on June 12, 1919, did not determine the lease or affect its validity; that it has kept and observed the conditions of that lease and paid the rentals thereon when the same became due. It is clear that T. C. Rose intended that his son should have and enjoy this property in fee simple, subject only to his control, which, by the terms of the deed, was specifically limited to his lifetime.

It is insisted, however, that because he retained the right to control the oil during his lifetime that he must necessarily have intended to retain the right and authority to make and execute a lease for the production of oil; that the drilling for oil involves the expenditure of a large amount of money, and that no one would be willing to expend money for the production of oil under a lease that terminated with the death of T. C. Rose. That may be entirely true, but it does not appear that any one did accept such a lease, or that T. C. Rose attempted by lease to project his control of the oil and gas, or any other minerals in or underlying the land, beyond his lifetime. On the contrary, when this lease was executed to Albin, all of the grantees named in these respective deeds joined with their father, T. C. Rose, in its execution. Beyond this we have no occasion to consider the character of the estate reserved by T. C. Rose, in view of the conclusion that the latter's control ceased with his death.

[2] Where a deed grants an estate in fee simple, any limitations, restrictions, or reservations in the deed must be strictly construed against the grantor. In this deed there was no reservation, except the control of the land, mineral, oil, timber, etc., during the grantor's lifetime. The word "control" does not import an absolute or even qualified ownership. On the contrary it is synonymous with superintendence, management, or authority to direct, restrict or regulate. See Words and Phrases Judicially Defined and cases there cited. For the reasons stated, this court is of the opinion that T. C. Rose did not

reserve, nor intend to reserve to himself, by this provision and condition written in his deed to C. C. Rose, the right and authority to execute a lease or contract in relation to this land, mineral, oil, or timber, that would be valid as against his grantees after his death, but, on the contrary, specifically provided that his control thereof should end with his death. It is also wholly unnecessary to consider whether the Union Gas & Oil Company paid or tendered to T. C. Rose during his lifetime, or after his death to the respective owners of the several tracts constituting the 250 acres, the rentals necessary to keep this lease in force and effect, within the time required by the contract.

[3, 4] It is further claimed on behalf of the appellees that C. C. Rose was guilty of laches in delaying the disavowal of the lease executed by him when an infant for more than 2½ years after he arrived at full age. While state statutes of limitation are not binding on the federal courts in equity, they are usually enforced therein when not violative of the federal principle, although complainant may be held guilty of laches working estoppel by reason of delay for less than the statutory period. Estep v. Coal & Coke Co., 239 Fed. 617, 152 C. C. A. 451; Pond Creek Coal Co. v. Hatfield, 239 Fed. 622, 152 C. C. A. 456. In this case, however, the delay by C. C. Rose in disavowing the lease executed by him when an infant has worked no prejudice whatever to the lessee or the present owner of the lease. T. C. Rose either rightfully or wrongfully repudiated this lease during his lifetime and returned all checks for rentals to the bank. Since his death neither of his sons have accepted any rentals. When this lease was executed, the lessee was fully informed of the fact that C. C. Rose was a minor. When he attained his majority, he was in school at Louisa, Ky., and was only at home two or three months before going into the navy, where he remained until July, 1919. No evidence had been offered tending to prove that the assignee of the lease expended any money or in any way changed or altered its position in relation to this property upon the belief or understanding that C. C. Rose, after arriving at full age, had affirmed this lease. Nor did it expend any money in the drilling of a well thereon until after the execution of the lease to Cyrus, and the notices to it that C. C. Rose disavowed his act as an infant. Under the facts and circumstances of this case, there are no equitable considerations that would estop C. C. Rose from disavowing this lease at the time he executed the lease to Cyrus, or at the time he served the notice of such disavowal upon the appellees.

For the reasons stated, the judgment of the District Court is reversed and the causes remanded, with directions to enter a judgment canceling the lease of T. C. Rose and others to A. C. Albin, and later assigned by him to the Union Gas & Oil Company, as to this separate parcel of the 250 acres, and quieting the title to the land described in the petition in C. C. Rose and J. M. Cyrus.