*Municipal Court of the City of Boston*
No. 133264
**S. ROSENTHAL & SON, INC.**

v.

**LIBERTY MUTUAL INSURANCE COMPANY**

Argued: March 25 — Decided: April 8, 1966.
*Present*: Adlow, C.J., Glynn & Foster, JJ.
Case tried to *Morrissey, J.*

*Adlow, C.J.* Action of contract to recover under a comprehensive general liability insurance policy issued by the defendant, (hereinafter referred to as the Insurer) for damage to a dam gate on which the plaintiff (hereinafter referred to as the Contractor) was doing sandblasting and painting work at the Franklin Falls Dam Reservation in the State of New Hampshire. The work was being done under a contract between the Contractor and the United States Govern-

ment (hereinafter referred to as the Government).

*At the trial there was evidence to show that* the Contractor on September 25, 1964 was performing a contract with the United States Government which included sandblasting and and painting the dam gates at Franklin Falls, New Hampshire, the entire Franklin Falls Dam Reservation being owned and maintained by the Government. The procedure employed is to lift the gates out of their wells by means of a permanent fixed hoist, transfer the gates by means of a travelling crane from inside the gatehouse onto a flatbed trailer, transport them 700 yards to a site designated by the Government Contracting Officer on the government reservation, hoist them from the trailer onto a scaffold and then sandblast and paint the gates. Upon completion of the painting the process is reversed. To raise the gates on the scaffold chain hoists are used, the gates being secured to the hoists by wire cables, the ends of which are fastened by cable clamps.

On September 25, 1964 the gate, which weighed 15-16 tons and which is the subject of this action, was hoisted from the flatbed trailer and raised to an upright position on the scaffold as shown in a photograph which was in evidence. Just as the trailer was being moved the gate fell to the ground and was damaged to the extent of $1,030.86. The reason it fell was because the single cable clamp on one hoist failed. It should have been secured by three or four clamps.

The fixed and travelling cranes are owned by the Government but were operated by plaintiff's personnel. The flatbed trailer was hired by plaintiff from a local concern. The plaintiff testified that the scaffold belonged to the Government, that it was erected by plaintiff with material purchased by the plaintiff, that it was a part of the contract that the scaffold remain in place and become property of the Government at the end of the contract. At the time of the accident the Contractor had a foreman and two helpers on the scene. They performed the rigging with cables and clamps owned by the Contractor and it was their decision as to how many clamps to use. There was a government inspector at the scene at the time of the accident and at all times, and the Contractor testified that the government inspector told them how to lift the gate. The work was outlined by the Government and approved by the Government. This inspection and control was required under the provisions of G.C.17 of the Government specifications for the contract.

Plaintiff owned a comprehensive general liability insurance policy issued by the Insurer and in force on the day of the accident. Under coverage B of this policy the defendant agreed

"to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Excluded under coverage B of the policy is "property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control."

Plaintiff duly notified defendant of the accident and resulting damage. Defendant disclaimed responsibility on the ground that the dam gate was in the care, custody, and control of the plaintiff. Upon demand by the Government, the plaintiff caused said damage to be repaired at a cost to the plaintiff of $1,030.86 which sum is agreed by plaintiff and defendant as fair and reasonable and which sum the Contractor seeks to be reimbursed by the Insurer under the policy.

At the close of the evidence the defendant requested the court to rule in effect that

"The evidence does not warrant a finding that the damaged property was under the care, control and custody of the United States Government."

The court refused to so rule, and in addition to denying the request made the following findings of fact in part:

"The court finds as a fact that the work on this massive gate, 15-16 tons, was performed on U. S. property, and under the general direction of the contracting officer and his appointed inspector.

The court finds notwithstanding the fact that the plaintiff's foreman and two laborers actually did attach the gate to the scaffold

in the sandblasting area, this massive gate was under the care, custody and control of the Corps of Army Engineers, an agency of the U. S. Government."

Being aggrieved by the refusal of the court to rule as requested and by the findings of fact the defendant brings this report.

There was no error. The contract of insurance on which the Contractor bases its claim excluded from coverage "property in the care, custody or control of the insured or property as to which the defendant for any purpose is exercising physical control." The words "care, custody, and control" are virtually synonymous.

See Webster's International Dictionary, 2d Edition. The word "control" connotes superintendence, management, or authority to direct, restrict or regulate. *Rose v. Union Gas and Oil Co.,* 297 Fed. 16, 18.

The part of the specifications annexed to the contract under which this work was performed entitled "Inspection" provide that "The work will be conducted under the general direction of the Contracting Officer and is subject to inspection by his appointed inspectors to insure strict compliance with the terms of the contract." (G.C.-17). According to the Contractor's evidence the government inspector, who was at the location of the work at all times, told the plaintiff's employees how to lift the gate and where to move it. Clearly the management and superintendence of the

undertaking remained with the Government. In no sense did the possession of this gate pass to the control of the plaintiff. It remained on the land of the United States Government, and under the immediate control of a United States Government inspector. We do not recognize in this situation the "care and custody" ordinarily found in a bailment, *Doherty v. Ernst,* 284 Mass. 341, 344, or the freedom to move as suited the convenience of the Contractor. None of the elements found in cases of bailment are evident here. *Walker v. Staples,* 5 Allen 34; *Sandler v. Commonwealth Station Co.,* 307 Mass. 470, 471. Aside from engaging to perform the specific task of sandblasting and painting the gate, the role of the Contractor was strictly that of complying with the orders and suggestions of the government inspector. With respect to moving this gate the employees of the plaintiff did what they were told to do. If they did it negligently it was nonetheless work over which they exercised no control. *Traders and General Ins. Co. v. A. N. Edwards and H. E. Tarpin,* 216 F.2d 441.

There is no error. *Report dismissed.*
Saul Andelman of Boston for the Plaintiff.
David W. Woods of Boston for the Defendant.